*163 OPINION OF THE COURT
Wachtler, J.
The question presented on this appeal is whether the “automatic standing” rule in search and seizure cases should be retained as the law in this . State. That rule relieves a defendant charged with a possessory offense of the burden of establishing that he has an interest in the premises searched or the property seized in order to have standing to challenge the search or seizure. We agree with the Appellate Division’s determination that the rule should no longer be applied.
Joseph Salerno was shot on February 10, 1977 and later died of a wound he received during the robbery of his hardware store in Rochester, New York. Two police officers, Parks and Peck, arrived at the scene within five minutes of the shooting. Parks obtained a description of the assailant and an account of the robbery from the victim, Mr. Salerno. Detective Perticone and other police officers arrived shortly thereafter.
A bystander at the scene told Detective Perticone that while shoveling snow at her home, located close to the scene of the crime, she had seen defendant, with whom she was acquainted, running away from the hardware store a few minutes before the police arrived. She said she had noticed a black and silver object protruding from his jacket. Detective Perticone was familiar with defendant as a result of the latter’s prior criminal activity. Perticone also knew that defendant had been apprehended at the nearby residence of his grandmother, Louise Ponder, on previous occasions.
Perticone communicated this information to the other officers and the group proceeded to the Louise Ponder residence. Perticone and two of the other policemen stationed themselves on a street running behind the house. Parks and Peck approached the side door of the house and observed a .22 caliber bullet lying on the snow-covered ground near the door. They knocked on the side door which the defendant opened, although he was not then recognized by either officer. When asked whether “Wade” was inside, the de *164 fendant pointed upstairs. Parks and Peck continued into the house leaving the defendant unattended. The defendant was apprehended by Perticone as he fled from the house.
After arresting the defendant, Perticone joined Peck in the house intending to search for the weapon. The Appellate Division found that Louise Ponder, who was home at the time, did not consent to a search of the house. Believing that Mrs. Ponder had consented, the officers proceeded to search the premises without a warrant and Peck found a sawed-off .22 calibre rifle inside a covered washing machine in the basement. Later at the station house defendant gave a written statement in which he described the robbery and admitted the shooting.
At the Huntley hearing, Mrs. Ponder testified that defendant was one of 30 grandchildren and, like the rest, he did not live with her but occasionally spent the night. She further testified that no particular room had been assigned for defendant’s use, that he was not staying at her home on February 10, 1977, and that he never slept in the basement nor used or had any interest in the washing machine.
Defendant was indicted and after a jury trial was convicted of felony murder (Penal Law, § 125.25, subd 3), manslaughter in the first degree (Penal Law, § 125.20, subd 1) and criminal possession of a weapon in the third degree (Penal Law, § 265.02, subd 4).
On these facts it is clear that there was probable cause for defendant’s arrest. The only other issue raised on this appeal which requires our attention is whether defendant should be afforded “automatic standing” to contest the validity of the warrantless search of Mrs. Ponder’s home, which led to the seizure of the weapon.
The “automatic standing” rule has its genesis in the Supreme Court’s 1960 decision of Jones v United States (362 US 257), where it was held that the'standing of a defendant charged with a possessory offense to challenge the validity of a search was not to be conditioned upon a demonstration that he had an interest in the premises searched or the property seized. Our court retained the rule as part of New York State’s criminal jurisprudence *165 in People v Hansen (38 NY2d 17), notwithstanding the Supreme Court’s apparent receptivity at that time to reconsideration of its “automatic standing” rule (Brown v United States, 411 US 223). Jones had not yet been expressly overruled by the Supreme Court and we felt constrained to continue to apply the rule in this State (38 NY2d, atp 23).
In 1980, and after our decision in Hansen, however, the Supreme Court unequivocally abrogated the “automatic standing” rule in United States v Salvucci (448 US 83). Defendant therefore has no automatic standing under the Fourth Amendment of the United States Constitution to challenge the warrantless search of his grandmother’s home, and the only remaining question is whether under section 12 of article I of the New York State Constitution our court would require continued application of the rule.
Analysis indicates that the “automatic standing” rule should be rejected. Even in Jones the Supreme Court made clear that as a general principle “it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he * * * establish, that he himself was the victim of an invasion of privacy” (362 US, at p 261). Additionally, section 12 of article I of the New York State Constitution conforms with the Fourth Amendment regarding the proscription against unreasonable searches and seizures, and this identity of language supports a policy of uniformity in both State and Federal courts. Finally, the constraint imposed by the decision in Jones, which we believed mandated our result in Hansen, has been removed by the Supreme Court’s decision in Salvucci. We are therefore now free to reevaluate the “automatic standing” rule and, seeing no reason at this time to diverge from the Supreme Court’s analysis in Salvucci, we likewise abrogate the rule as part of the law of this State.
Our recent decision in People v Henley (53 NY2d 403), although involving nonpossessory offenses, foreshadowed the conclusion we reach today. There, Jim Henley was taken into custody as a burglary suspect and transported to his apartment where he consented to a request by the police *166 to enter. His brother Willie Norman Henley, who also lived at the apartment, was present inside at the time of the entry. The police seized merchandise found in the apartment which bore the name of the company reporting the burglary and the Henley brothers were subsequently indicted for burglary and grand larceny. We held that the evidence should have been suppressed as to Jim Henley because there was no probable cause to take him into custody and transport him to his abode. We refused to suppress the evidence as to Willie Norman Henley, however, finding that he had no standing to challenge the illegality of his brother’s custodial detention or transportation and, deprived of that premise, had no other basis to question the validity of the consent given by Jim Henley to the police to enter the Henley apartment.
Turning again to the case now before us, with the rejection of the automatic standing rule we conclude that defendant may challenge the validity of the warrantless search which led to the seizure of the weapon only if he can demonstrate a reasonable expectation of privacy in his grandmother’s home. From his grandmother’s testimony at the suppression hearing we can only conclude that defendant had no reasonable expectation of privacy in her home, nor, more specifically, in the particular area searched. The weapon was therefore properly received into evidence.
We have reviewed the other contentions raised by defendant on this appeal and find them to be without merit. The order of the Appellate Division should, therefore, be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order affirmed.