OPINION OF THE COURT
Hancock, Jr., J.
 The People charged defendant with criminal possession of a weapon solely on the basis of the statutory presumption of possession (Penal Law § 265.15 [3])[1] arising from the fact that the weapon was discovered in the passenger compartment of the taxicab in which he was riding. We hold that under these circumstances the People’s imputation of constructive possession of the weapon to defendant as the predicate for the crime with which he was charged constituted a sufficient basis for defendant to challenge the police conduct in searching the passenger compartment of the cab. Moreover, irrespective of his right to challenge the search, defendant, as a passenger in the cab, had a right to contest the legality of the stop of the cab and to seek suppression of the weapon as the product of that allegedly unlawful police conduct. On the moving papers presented to it, the suppression court should *517 not have denied suppression without according defendant a hearing on these issues.
I
Defendant seeks a reversal of his conviction for criminal possession of a weapon, third degree. On the evening of June 15, 1984, defendant and two companions, Hector Colon and Anthony Veggacada, were riding in a taxicab near the intersection of 112th Street and 5th Avenue in Manhattan.[2] Plainclothes police officers assigned to the street crime unit and traveling in a yellow medallion taxi directed the driver of defendant’s cab to pull over. The three occupants were ordered out of the passenger compartment and searched without their consent. When the police, in searching the interior of the cab, discovered a gun in a black leather bag resting on the back seat, they placed the passengers under arrest and charged them with its possession. The explanation for the arrest given by the prosecutor, as related in the decision of the suppression court, was that "the police saw [defendant, Colon and Veggacada] seated in the back of a livery cab and approached. The police claimed the [three occupants] made 'suspicious moves’ and, accordingly, the People assert, [they] were ordered out of the cab.” Defendant’s motion to suppress the weapon because of the illegality of the stop and search was denied without a hearing.
In the jury trial which followed, as in the proceedings before the suppression court, there was no evidence that defendant owned the gun or knew of its presence; the only basis for guilt was the statutory rule that the presence of a gun in an automobile "is presumptive evidence of its possession by all persons occupying such automobile at the time [it] is found” (Penal Law § 265.15 [3]).[3] After defendant was convicted of the gun possession charge, the Appellate Division affirmed with a divided court (118 AD2d 236).
The contentions of defendant which we address concern the propriety of the court’s denial of his motion to suppress the
*518 weapon without a hearing. Noting that defendant disavowed any interest or claim of a privacy right in the bag and that "automatic standing” is no longer the rule in New York (People v Ponder, 54 NY2d 160), the suppression court held that defendant lacked standing to contest the search of the passenger compartment. It concluded that his rights as a passenger in a taxicab were no greater than the rights of the passenger in the private automobile involved in Rakas v Illinois (439 US 128) and reasoned that defendant could, therefore, claim no right of privacy in the area searched. It also determined that there was an insufficient showing that the seizure of the gun resulted directly from the stop. Thus, his claim that the stop had been unlawful could provide no basis for suppression.
The Appellate Division majority, in its opinion, agreed that Rakas was controlling on the question of defendant’s right of privacy in the passenger compartment of the cab and rejected defendant’s argument that under Rios v United States (364 US 253) "a taxicab passenger has greater standing to object to a search of the taxicab than the passengers in Rakas had to contest the search of a private car” (118 AD2d 236, 242, n 3, supra). It also agreed that there was no ground for suppression of the gun as the product of the allegedly unlawful stop, finding on its review of the trial record a sufficient showing "that the taxicab in which defendant was a passenger passed a red light and that the stop was justified” (118 AD2d 236, 244, supra).[4]
For reasons stated hereafter, there should be a modification. Defendant should have the right to a suppression hearing at which he may, if he chooses, contest the legality of the conduct of the police both in making the initial stop and in searching the interior of the cab.
II
The critical factor in our analysis of defendant’s right to challenge the search is that the charge against him was *519 founded only on the statutory presumption arising from the facts that he was riding in the passenger compartment of the cab and that the gun was subsequently found in the passenger compartment. We hold simply that the People may not predicate defendant’s guilt solely on the constructive possession of the weapon attributed to him as a passenger in the cab based on the presumption (Penal Law § 265.15 [3]) and simultaneously deprive him of the right to challenge the search. In a recent decision, People v Mosley (68 NY2d 881), we applied the same rationale where the police based their claimed probable cause for arresting defendant on their discovery of a starter pistol on the person of his companion, Mackie. In holding that defendant could question the lawfulness of his arrest by challenging the asserted basis for it — the search of his companion — we stated that "[i]nasmuch as the People rel[ied] on the discovery of the starter pistol on Mackie as the basis for the arrest of defendant — that defendant constructively possessed the weapon concealed on Mackie’s person — defendant ha[d] standing to contest the frisk of Mackie” (id., at 883; emphasis added).
The holding here is in no way inconsistent with our decision in People v Ponder (54 NY2d 160, supra). In Ponder we adopted the Supreme Court’s ruling in United States v Salvucci (448 US 83) abrogating the so-called "automatic standing rule” established in Jones v United States (362 US 257), under which a defendant charged with a possessory crime was permitted to challenge the legality of the search without regard to whether he had an expectation of privacy in the premises searched and without alleging any possessory interest in the items seized. Here defendant does not ground his right to contest the legality of the search on any asserted right to possess the gun or on any claim that merely because he was accused in the indictment of a crime of possessing it he should have "automatic standing”. His asserted right to question the legality of the search rests entirely on the circumstances giving rise to the presumption.
Our holding that defendant had a right to challenge the search of the taxicab on constitutional grounds is based on our analysis of applicable Federal and State authorities (see, United States v Salvucci, 448 US 83, 88, supra; Rios v United States, 364 US 253, 262, n 6, supra; People v Mosley, 68 NY2d 881, supra; People v Ponder, 54 NY2d 160, supra) and on our conclusion that to deny a defendant a hearing under these circumstances would be repugnant to the requirements of fair *520 play which have "evolved through centuries of Anglo-American constitutional history”, particularly as applied to the relationship "between the individual and government” (AntiFascist Comm. v McGrath, 341 US 123, 162 [Frankfurther, J., concurring]; see, Wardius v Oregon, 412 US 470, 475-476; Malinski v New York, 324 US 401, 414-415; Lisenba v California, 314 US 219, 236; People v Isaacson, 44 NY2d 511, 520). The rule the People would have us sanction is this: the government, through its agents, may search a taxicab and, upon finding a gun, use the legal fiction of constructive possession to prosecute all passengers, conscious or not of the gun’s existence, and yet deny those it accuses a right to question the actions of its agents in conducting the search. Such a rule offends fundamental tenets of fairness inherent in New York criminal jurisprudence (see, NY Const, art I, § 6; People v Acevedo, 69 NY2d 478; People v Mosley, 68 NY2d 881, supra; People v Isaacson, supra; People v Brown, 40 NY2d 381) and we reject it.[5]
Ill
Before the suppression court defendant urged a separate and independent basis for excluding the gun: that irrespective of the legality of the police actions in searching the cab, their actions in stopping it were unjustified and the gun should be suppressed as the product of the unlawful stop. As a passenger, defendant had standing to contest the stop of the vehicle and he, therefore, should have been given a hearing on this issue as well.[6]
*521 The exclusionary rule generally bars from trial all "physical, tangible materials obtained either during or as a direct result of an unlawful invasion” (Wong Sun v United States, 371 US 471, 485; People v Bethea, 67 NY2d 364; People v Johnson, 66 NY2d 398; People v Bigelow, 66 NY2d 417; People v Gokey, 60 NY2d 309; People v Elwell, 50 NY2d 231; cf., People v Arnau, 58 NY2d 27). As noted in People v Stith (69 NY2d 313), there are circumstances when the exclusionary rule will not be applied: when, for example, the evidence "is gained from an independent source” (Silverthorne Lbr. Co. v United States, 251 US 385, 392), or when "the detrimental consequences of illegal police action become so attenuated” that the taint of the initial misconduct is dissipated (Brown v Illinois, 422 US 590, 609 [Powell, J., concurring in part]).
Here, from the information before the suppression court, it appears that the police actions in stopping the cab, ordering the defendant to get out, searching him without his consent, searching the back of the cab, opening the bag and finding the gun constituted one continuous chain of events. There was nothing before the suppression court to show that the taint of the allegedly improper stop had become attenuated, that the gun would have been independently discovered or that for any other reason the gun was not " 'come at by exploitation of that illegality’ ” (Wong Sun v United States, supra, at 488, quoting Maguire, Evidence of Guilt, at 221 [1959]). Under Federal and New York constitutional law it was error to deny a hearing on the issue of the stop.
Contrary to the People’s contentions the moving papers were minimally sufficient to warrant a hearing. In any event, as noted by the dissent at the Appellate Division (118 AD2d 236, 247, supra) it is clear from the suppression court’s written decision that its reason for denying the motion "had nothing to do with the sufficiency of defendant’s papers, but, rather, had to do with defendant’s alleged lack of standing to challenge the seizure of the gun” and that "any objection to the sufficiency of the papers [was] waived.”
The order of the Appellate Division should be modified and the case remitted to Supreme Court, New York County, for a suppression hearing and in the event that defendant prevails thereon, for dismissal of the indictment; in the event that the *522 People prevail, the judgment should be amended to reflect that result. As so modified, the order appealed from should be affirmed.[7]

.Penal Law § 265.15 (3) states in pertinent part: "The presence in an automobile, other than a stolen one or a public omnibus, of any firearm * ** * is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon * * * is found”.

.The facts as related here are essentially those set forth in the decision of the suppression court denying defendant’s motion and in the moving papers before that court. The court held no hearing and made no findings. Our statement must be viewed as a recitation of allegations only.

.In its jury charge during the trial of defendant, Colon and Veggacada for weapon possession, third degree, the court stated: "Seems to me that there’s absolutely no other evidence in the case as to Millan other than the presumption which would permit you to find Millan guilty”.

. The Appellate Division’s use of the trial testimony for the purpose of supporting the determination of the suppression court in denying the motion was contrary to established precedent (see, e.g., People v James, 67 NY2d 662, 664; People v Dodt, 61 NY2d 408, 417; People v Gonzalez, 55 NY2d 720, 721, cert denied 456 US 1010). The papers before the suppression court contain no reference to any traffic violation or other conduct of the cab driver which would constitute a reason for the stop.

.Because our decision that defendant had a right to challenge the search of the cab depends upon the fact that he was charged with constructive possession of a weapon under the presumption (Penal Law § 265.15 [3]) and because our holding that he has a right to contest the search of the cab is limited to that situation, it is unnecessary to reach the issue addressed in the briefs and at argument whether, under other circumstances, defendant as a passenger in a cab would have had a right of privacy in the passenger compartment (see, Rakas v Illinois, 439 US 1281). We do not decide that issue.

.The People’s arguments that defendant had no standing to challenge the search of the cab have no bearing on defendant’s right to contest the stop. As pointed out by Professors LaFave and Israel, Rakas "should not be taken to mean that persons who are 'merely passengers’ will never have standing” and, as two concurring and four dissenting Justices in Rakas recognized, "a passenger does have standing to object [to alleged police misconduct]. If either the stopping of the car or the passenger’s removal from it are unreasonable in a Fourth Amendment sense, then surely the *521 passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit” (1 LaFave and Israel, Criminal Procedure § 9.1, at 726; emphasis in original).

.Our decision to modify and to require a hearing on the legality of both the stop and the search, while based on our analysis of Federal constitutional law, rests equally on independent State grounds: that defendant’s rights under our State Constitution (NY Const, art I, §§ 6, 12) were violated (see, Michigan v Long, 463 US 1032, 1041-1042; People v Stith, 69 NY2d 313, 316, n).