OPINION OF THE COURT
William D. Friedmann, J.
Defendants Huáscar Pimental, Lenny Wiesnin and Estuardo *666 Martinez, passengers in a moving automobile, are charged along with others with criminal possession of a controlled substance and using drug paraphernalia (Penal Law §§ 220.16, 220.09, 220.50) on the basis of the statutory presumption of possession in Penal Law § 220.25 (1) which provides that "the presence of a controlled substance in an automobile” is presumptive evidence of knowing possession by occupants of the automobile. (See, People v Leyva, 38 NY2d 160.)
The charges arise from the fact that narcotics and drug paraphernalia were discovered in the automobile the moving defendants were riding in after it was stopped by the police.
THE ISSUES
This suppression hearing places in issue whether the passenger defendants have standing to question the stop and the resulting search and seizure of the narcotics from the automobile.
Without prejudice to the People’s "no standing” position, this court permitted that issue to be fully addressed by both sides during and after the suppression hearing.
PERTINENT FACTS PERTAINING TO THE STOP — SEARCH — SEIZURE
The arresting officer observed five Hispanic teen-age males in a brand new rented automobile. He directed them to pull over. After the automobile came to a stop he observed what later was confirmed to be narcotics being tossed into the back seat of the automobile. At the suppression hearing the arresting officer testified inconsistently that he initially observed the automobile pass a red light and make an illegal "U” turn. This testimony was diametrically at odds with the officer’s arrest paperwork which states that he pulled the automobile over after he concluded that it was "suspicious”. Specifically, it was noted that a 1987 Chevrolet with "Z” (rental) plates and occupied by five Hispanics was stopped. No mention was made in the arrest paperwork of any preceding or accompanying traffic infraction. Additionally, the District Attorney’s interview notes contain essentially the same factual rendition which contains no reference of any kind to any preceding traffic regulation, violation or unlawful behavior.
THE LAW
Occasionally, the law finds itself in an absurd "Catch-22” *667 posture (Joseph Heller, Catch-22 [1955]); this term having stepped into the English language to stand for all the absurdities of our age.
Since the elimination of the doctrine of automatic standing by the Court of Appeals in People v Ponder (54 NY2d 160), which adopted the United States Supreme Court’s ruling in United States v Salvacci (448 US 83), abrogating the so-called "automatic standing rule” established in Jones v United States (362 US 257), passengers in a moving vehicle have found themselves stripped of their Fourth Amendment rights. That is, they have been denied standing or right to question the reason for the stopping of the vehicle they were riding in, as well as any standing or right to challenge the legality of the search of the vehicle. However, the judicial interpretation which stripped these constitutional rights from such passengers still subjected them to the full effect of the statutory presumption of knowing possession of a weapon or a controlled substance found in the automobile (Penal Law § 265.15 [3]; § 220.25 [1]; and see, People v Leyva, 38 NY2d 160, supra).
"Law” is an existing system of control over the conduct of people. However, there is no guarantee that the system of control in existence at any time within a society and the accepted fundamental concepts of fairness or reason espoused by any society will always mesh. Concepts of justice, fairness and reason are ideals which good law should continuously strive to mirror. Law, therefore, should be ever changing, changing in the direction of eliminating any disparity between it and a society’s concepts of what is just, fair and reasonable in the treatment of the competing interests of individuals and groups with due regard for the common good.
Sometimes it takes our courts, which are the guardians of the law, considerable periods of time to narrow disparity gaps between an interpretation of law at any given time and relevant concepts of justice, fairness or reason.
Since this suppression hearing was conducted, this court’s attention has been directed to two recent decisions of the New York Court of Appeals which seem clearly dispositive of the People’s standing challenge and which clear to some extent the absurdity left by the abrogation of the "automatic standing rule”.
In People v Mosley (68 NY2d 881 [1986]), the court held that a defendant has standing to contest the stop and frisk of a person with whom he was walking down the street since the *668 prosecution relied upon the discovery of a gun on the other person as the basis for arresting the defendant charging him with constructive possession of the weapon concealed on his companion.
More relevant was the court’s recent decision in People v Millan (69 NY2d 514 [1987]), where a passenger riding in the rear of a taxicab was held to have standing to challenge a stop of the vehicle and also challenge the search of the rear of the taxi, because under the statutory presumption of Penal Law § 265.15 (3), he was charged with constructive possession of a gun which was found in a zippered bag located in the rear of the taxi. Millan, by its precise reasoning squarely proscribes in New York State the "legitimate expectation of privacy requirement” of persons situated in a moving vehicle as set forth by the United States Supreme Court in Rakas v Illinois (439 US 128 [1978]). There the Supreme Court stated that " 'without a proprietary or other similar interest in an automobile, a mere passenger therein lacks standing to challenge the legality of the search of the vehicle’ ” (supra, at 131). Such proscription being limited as far as a search is concerned to situations where the defendant has been charged with "constructive possession” (in Millan, a weapon, here narcotics).
The challenge to the stop is precisely covered by Millan (supra, at 520-521, n 6) which states "6. The People’s arguments that defendant had no standing to challenge the search of the cab have no bearing on defendant’s right to contest the stop. As pointed out by Professors LaFave and Israel, Rakas 'should not be taken to mean that persons who are "merely passengers” will never have standing’ and, as two concurring and four dissenting Justices in Rakas recognized, 'a passenger does have standing to object [to alleged police misconduct]. If either the stopping of the car or the passenger’s removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit’ (1 LaFave and Israel, Criminal Procedure § 9.1, at 726; emphasis in original).”
RETROFITTING OR TAILORING OF THE OPERATIVE FACTS
Having resolved the standing issue, this court now turns to the "stop” contention advanced by the arresting officer in an *669 inconsistent fashion for the first time at the suppression hearing, i.e., that prior to the stop, he observed the automobile making an illegal turn through a red light.
This court finds such testimony incredible when considered in the context of the officer’s prior arrest paperwork and the District Attorney’s interview notes, which make no reference of any kind to any traffic regulation violation or unlawful behavior.
Retrofitting facts and circumstances of a crime occurrence to the law (constitutional — statutory — judicial) at suppression hearings and/or trial is not an unusual courtroom phenomenon.
In the experience of this court, such retrooperative posturing or tailoring is equally and unfortunately on occasion indulged in by both witnesses for the prosecution and defense, who belatedly become acquainted with the requirements of the law. Such indulgence should be vigorously examined and where uncovered, unceremoniously condemned and exorcised. (See, People v Roberts, 94 AD2d 237 [1st Dept 1983]; People v Garafalo, 44 AD2d 86 [2d Dept 1974]; People v Berrios, 28 NY2d 361 [1971]; and see, People v Batista, July 26, 1984, indictment No. Q4412-1983, where this court noted "its deep disturbance and dismay at what appears to be a fabrication of events calculated to meet necessary constitutional guidelines on the part of both witnesses.”)
CONCLUSION
The seized narcotics — the fruit of a poisoned tree (unlawful stop without a permissible and attributable basis of suspicion) must be suppressed. The moving defendants’ application is granted and is made controlling as to all named defendants.