■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT DUNLAP, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Dunkin, J.), rendered March 20, 1984, convicting him of sexual abuse in the first degree, and assault in the third degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial (Lakritz, J.), after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

We find that the prosecutor's summation in this case was so highly prejudicial as to have deprived the defendant of a fair trial, despite the overwhelming proof of his guilt *(see, People v Crimmins,* 36 NY2d 230).

At the trial, the complainant identified the defendant and a codefendant as her assailants during a party. While other witnesses corroborated the complainant's testimony, there were some inconsistencies in the evidence concerning the specific actions of the defendant and codefendant during the course of the evening. In his summation, the prosecutor diverted the jury's attention from these inconsistencies by referring to the defendant and his codefendant as "shark A and shark B".

"The issue is what occurred that night and what these boys

did. Ever watch Under Sea Adventures with Jacques Cousteau or anything like that on TV? He does a very interesting segment on sharks. Now, sharks are a very interesting breed of creatures. They're very nearsighted, for one thing, can't see very far. They don't have much on the cap, don't have much going up here. They look a lot alike, but they have one thing that they always do. They can smell blood. They can smell it for miles. They know where blood is and they go to it and when they go to it, the teeth come out and when the teeth come out, somebody gets hurt. Now, what were those boys doing there * * *

"Now, just for a minute, when you're considering the two sharks, let's call them shark A and shark B. I don't care which one you want to call A or B. Take your choice. Remember, we're talking about acting in concert. The sharks could smell the blood. Somehow or other they knew about some money. What were they doing at that party? Ask yourself that question. They knew about that party. Why that party? Sharks have a good sense of smell, but first they got to get in the ocean * * *

"Now, after Dolores was patten [sic] down by Maryann, shark A or shark B decides he's going to move in, so he starts circling his prey. Give the girl her money, you know you got the money, pat, pat. Isn't that the way she said it? In the hall, Lenzie comes in and he says, what's going on here? Shark B or shark A is now engaging the other prey. The other shark is inside. He's singled out his prey * * *

"Meanwhile, shark A or shark B is inside with Dolores. Now it starts to get good. It starts to escalate as most sharks when they're feeding on their prey, they start out with a little bite and then they get excited by the blood. The blood gets them going and they get excited * * *

"Now, out in the hall, shark A and shark B are helping each other. Let's get rid of these little fish. We got a bigger fish in the room. Who was it? Dolores * * * The sharks now turn for the kill. They go in the room * * * Now, the sharks had been pretty good up to that point. They had beat up everybody else * * * The sharks thought about it for a minute. Well, they had had some fun. They didn't have as much fun as they thought they were going to have. Hell, they thought they were going to have a lot of fun with Dolores. They had her clothes off. They were playing with her but the sharks said, 'Hey, the police are coming' and as most sharks do, they're always hungry. They're never satisfied, but they

are survivors. They have lived since prehistoric times in the form they have now * * *

"Now, why was there a fight? Well, I told you about that. The sharks. smell blood and the sharks go after blood and when they go after it, they fight for it. Why were they picking on them? Because the sharks thought she was dead meat".

The defense counsel did not object to the prosecutor's intemperate remarks during the summation in order for the trial court to take any action to abort their prejudicial effect. The defendant's motion for a mistrial following the summation was denied, and no curative instructions were given. While "[r]eversal is an ill-suited remedy for prosecutorial misconduct" *(People v Galloway,* 54 NY2d 396, 401), its invocation cannot be shunned when the misconduct has substantially prejudiced a defendant's trial, as in the instant case.

We find no error in the hearing court's denial of that branch of the defendant's omnibus motion which was to suppress physical evidence. The defendant failed to establish that he had a reasonable expectation of privacy in the room where he was arrested and therefore lacked standing to contest the warrantless entry by police officers *(see, People v Ponder,* 54 NY2d 160; *People v Scott,* 124 AD2d 684; *People v Wilkerson,* 108 AD2d 831). Even if the defendant did have standing, we would find, based on the evidence adduced at the suppression hearing, that the warrantless entry was justified by the exigent circumstances *(see, People v Gordon,* 110 AD2d 778; *cf., Payton v New York,* 445 US 573) and that the seizure of the chuka sticks and BB gun was justified since the items were in open view of the police officers *(see, People v Herrara,* 112 AD2d 315).

The defendant's contention that the evidence was insufficient as a matter of law to prove his guilt beyond a reasonable doubt is without merit. In view of our decision to order a new trial, we do not reach the defendant's remaining contentions. Thompson, J. P., Brown, Rubin and Harwood, JJ., concur.