■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD KNIGHT, Appellant.—Judgment of the Supreme Court, New York County (Thomas Galligan, J., at hearing; Harold Rothwax, J., at plea and sentence), rendered September 11, 1985, convicting defendant of criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09), and sentencing him to a term of five years' proba-

tion, is unanimously reversed, on the law, the motion to suppress granted, and the indictment dismissed.

At approximately 3:20 A.M. on April 8, 1983, Police Officer Joseph Branzetti and his partner, Police Officer Harrison, were in uniform and driving a marked patrol car west on 145th Street in upper Manhattan. As their vehicle approached St. Nicholas Avenue, Officer Branzetti observed several cars double-parked between 145th and 146th Streets, outside of a bar reputed to be a "drug location". Having determined to make further observations, the officers drove past the double-parked vehicles, all of which had their motors running, and took note of the cars' occupants. On the end of the row of cars was a livery cab with Carl Jeter in the driver's seat and the defendant in the passenger seat directly behind Jeter.

After passing the entire line of double-parked cars, Officer Branzetti made a U-turn, drove slowly by again, and then crossed the intersection of St. Nicholas Avenue and 145th Street, where he made a third U-turn and parked directly behind the livery cab, although on the other side of the intersection. Approximately one minute later, a man emerged from the bar carrying a brown paper bag and an article of clothing resembling the hood of a jacket, and opened the right rear door of the livery cab. As he began to enter the vehicle, the man looked toward the parked police car and made eye contact with Officer Branzetti. Dropping the items he carried into the cab, the man backed out. After stopping to say something to the driver, the defendant also left the cab.

Defendant and the man began walking north together on St. Nicholas Avenue, and Jeter drove the livery cab past them for a distance of 3 or 4 blocks. Officer Branzetti then observed as Jeter made a U-turn, cutting off another northbound vehicle, and drove south, stopping when he was directly opposite defendant and the third man. Defendant then ran across the street and got back into the livery cab's back seat. The third man remained on the sidewalk and was not seen again.

The cab proceeded to turn right on 145th Street and was heading west with increasing speed when Officer Branzetti began to follow. As the cab stopped for a red light on Amsterdam Avenue, the officer pulled behind it, activated his turret lights, and sounded his horn siren twice. Both the defendant and Jeter turned to look, and Officer Branzetti motioned Jeter to pull over to the side of the street. Instead, Jeter stopped his cab in the intersection and walked up to the police car to ask what was wrong.

Upon being advised that he had made an illegal U-turn on St. Nicholas Avenue, Jeter apologized and repeatedly asked to be permitted to go on his way. The officer directed him to pull over, stating that he wanted to check Jeter's license and registration. When Jeter complied, Officer Branzetti walked over to the driver's side of the car and Officer Harrison approached defendant, who was sitting in the right rear passenger seat. Officer Branzetti asked Jeter for his license and registration and, noticing that the brown paper bag and hood were on the floor between defendant's legs, inquired as to who owned those items. Jeter pointed to the defendant and said that he had brought them into the cab. Officer Harrison then asked defendant who owned the bag and he said that it belonged to Jeter.

At this point, Officer Branzetti directed Officer Harrison to open the bag and examine its contents. Harrison picked up the paper bag and opened it, discovering 150 glassine envelopes containing heroin. Jeter and defendant were both arrested and subsequently indicted. The charges against Jeter were later dismissed.

In denying defendant's motion to suppress, the hearing court determined that defendant had no standing to contest the stop of the livery cab and, further, that the police action was proper, in any event.

In *People v Millan* (69 NY2d 514, 520), decided subsequent to the suppression ruling challenged herein, it was firmly established that taxicab passengers have the right to contest the stop of the vehicle. *(See also, People v Fore,* 131 AD2d 329; *People v Madera,* 125 AD2d 238.)* The case at hand raises no challenge as to the stop, which defendant concedes was proper in light of the illegal U-turn *(People v Ingle,* 36 NY2d 413), and addresses solely the search and seizure which followed. As here, the defendant in *Millan* had not asserted possessory rights in the bag which, when searched by the police officers who had stopped the livery cab, was found to contain a gun. In ruling that the passenger nevertheless had standing to contest the search of the bag, the Court of Appeals reasoned that a rule which would permit the prosecution to impute constructive possession of a weapon to a defendant automobile passenger *(see,* Penal Law § 265.15 [3])* and yet deny him the right to contest the search which yielded the contraband, "offends fundamental tenets of fairness inherent in New York criminal jurisprudence". *(People v Millan, supra,* at 520.)

In the case at bar, the prosecution also relies upon a

statutory presumption imputing possession of contraband found in an automobile to its occupants, albeit one pertaining to controlled substances. *(See,* Penal Law § 220.25 [1].) The *Millan* rationale, which does not depend on the nature of the contraband, applies equally to establish that the defendant here has standing to challenge the search of the paper bag. That the prosecution also pursued the theory of *actual* possession does not, as the People argue on appeal, distinguish this case so as to deny defendant standing. Rather, this second theory simply provides another basis upon which defendant has the right to contest the search. Indeed, under the theory of actual possession, defendant's standing is well established, for in searches of one's person, the "expectation of privacy is beyond question". *(People v Hibbler,* 111 AD2d 67.)

Having determined that the defendant possesses the requisite standing to contest the search, we next examine the propriety of the police action. As previously noted, the police were authorized to stop the livery cab for having made an illegal U-turn, and to approach the driver and request information in connection therewith. The record fails to disclose, however, any observations or unfolding events which would justify an increase in the level of intrusion appropriate to such an inquiry. *(See, People v De Bour,* 40 NY2d 210, 223, 225.)* The brown paper bag, which measured 12 inches in height and 6 to 8 inches in width, and its accompanying jacket hood possessed none of the "telltale" signs of drug activity *(see, People v Corrado,* 22 NY2d 308, 313) and no suspicious bulges or furtive movements indicating the presence of weapons or danger to the officers were observed. *(See, People v Vidal,* 71 AD2d 962.)

Nor did defendant's or Jeter's responses to Officer Branzetti's question regarding ownership of the bag heighten the level of intrusion which the officers could constitutionally undertake, for while these answers "may have aroused the officer's curiosity, they did not necessarily indicate criminal activity". *(People v Meachem,* 115 AD2d 370, 372.)

The People urge that the officers' observations of the livery cab and its occupants prior to the commission of the traffic infraction, as well as the general area in which the events occurred, must be weighed in assessing the subsequent police activity. We find that the conduct of the defendant, who sat in a livery cab outside of a bar, briefly left with a third man who deposited seemingly innocuous items into the cab, and then returned to the cab, was "equivocal, at best", and therefore incapable of constituting a sufficient predicate to justify a stop

and frisk, let alone probable cause to justify a search. *(People v Mosley,* 68 NY2d 881, 883.) Nor did the location in which this "otherwise innocuous behavior" took place warrant the search. *(People v McCready,* 121 AD2d 897, 898, *appeal dismissed* 68 NY2d 981.)

Contrary to the hearing court's determination that the police officers engaged in "minimal intrusion", the opening of the bag was a full-blown search, requiring probable cause. *(People v McNatt,* 65 NY2d 1046.) In the very context of traffic violation stops, we have repeatedly held that, absent probable cause or a reasonable risk of danger, the police are not authorized to examine the contents of a bag. *(See, e.g., People v Gonzalez,* 115 AD2d 73, 82-83, *affd* 68 NY2d 950; *People v Ocasio,* 119 AD2d 21, 26.) Concur—Murphy, P. J., Ross, Carro, Kassal and Ellerin, JJ.