Hancock, Jr., J.
(dissenting). When the State bases an
individual’s guilt on his lawful dominion and control over a place where contraband is found, it may not dispute that same dominion and control to deny him the right to challenge the police conduct in searching that place. The logic and simple justice of this principle was the basis of the Federal and State constitutional rule announced in People v Millan (69 NY2d 514).[1] The same principle was also at the root of our decision in People v Mosley (68 NY2d 881). Indeed, it seems virtually unthinkable that the law could be otherwise.
The issue in this case is whether an individual has standing to challenge the police search of the place where contraband is found, when the State has charged him with possession of the *365 contraband solely on the ground that he had dominion and control over that place — not that he had direct control over the contraband itself.[2] This case, therefore, does not involve "automatic standing”. Defendant’s claimed standing is not based merely on his being charged with some possessory crime. Hence, the majority’s reliance on decisions such as People v Ponder (54 NY2d 160) and United States v Salvucci (448 US 83, 92-93) is entirely misplaced. The distinction is crucial.
Nor is this a case where the People’s proof of dominion and control, if accepted, would not establish a cognizable right of privacy under the State and Federal Constitutions. The claim here involves defendant’s dominion and control over an apartment where he allegedly resided with his girlfriend and child —not some area in which he could have no lawful interest. Thus, the majority’s illustrations of places where a defendant would have no legitimate expectation of privacy — e.g., abandoned premises, public area, temporary storage place (majority opn, at 359) — miss the point.
The present appeal centers only on this: the question of defendant’s standing based on the State’s own allegations— allegations that are the sine qua non of the constructive possession charge here — i.e., that defendant exercised sufficient dominion and control over the place searched to be responsible for what is inside; whether, if the State bases its charge against defendant solely on such assertions, it should be allowed to take exactly the opposite position when defendant seeks to vindicate his right to be protected from an unconstitutional search. Here, defendant’s guilt is predicated solely on the People’s claim that he had possessory control over the apartment where the drugs and gun were found. In permitting the People to deny that defendant had such dominion and control in order to bar his challenge to the concededly illegal search of the apartment, the majority now approves the State’s assertion of such squarely contradictory positions.
This ruling directly contravenes the principles and reasoning which underlie our decisions in People v Millan (supra, at 519, 522, n 7 [defendant accused of constructive possession of a gun found in a taxicab in which he was a passenger should have the right to contest search of cab]) and People v Mosley (supra [when police base their arrest of defendant on his *366 companion’s possession of a weapon, defendant should have right to contest legality of frisk of companion which lead to discovery of the weapon]). In People v Millan (supra, at 519-520), we said that to deny the defendant a right to contest the search of the cab "would be repugnant to the requirements of fair play which have 'evolved through centuries of Anglo-American constitutional history’, particularly as applied to the relationship 'between the individual and government’ [cites omitted]. The rule the People would have us sanction is this: the government, through its agents, may search a taxicab and, upon finding a gun, use the legal fiction of constructive possession to prosecute all passengers, conscious or not of the gun’s existence, and yet deny those it accuses a right to question the actions of its agents in conducting the search. Such a rule offends fundamental tenets of fairness inherent in New York criminal jurisprudence ([citing] NY Const, art I, § 6 * * * People v Mosley, 68 NY2d 881 [other cites omitted]) and we reject it. ” (Emphasis added.)
Applying the rule set forth in Millan and Mosley, the courts of this State have uniformly allowed defendants charged with constructive possession of an item, based on possessory control over an area, to challenge the legality of the search of that area (see, People v Wesley, 139 AD2d 946 [4th Dept]; People v Hicks, 138 AD2d 519, 520 [1st Dept]; People v Knight, 138 AD2d 294, 296 [1st Dept]; People v Collins, 137 AD2d 542, 545 [2d Dept]; People v Giles, 137 AD2d 1, 4 [1st Dept]; People v Martin, 135 AD2d 355, 356 [1st Dept]; People v Fore, 131 AD2d 329, 330 [1st Dept]; People v Pagan, 138 Misc 2d 802, 803-805 [Sup Ct, Bronx County]; People v Martinez, 136 Misc 2d 665, 667-668 [Sup Ct, Queens County]; see also, People v Davis, 130 AD2d 268, 272 [1st Dept]; People v Ycasa, 140 Misc 2d 114, 120 [Crim Ct, NY County]). No distinction has been made between constructive possession charges which are aided by a statutory presumption (see, e.g., Penal Law §§ 220.25, 265.15) and those which are not (see, e.g., People v Martin, supra, at 356; People v Ycasa, supra, at 120; People v Pagan, supra, at 803-804; and see, Preiser, Criminal Procedure, 39 Syr L Rev 237, 251-252 [1988]).
The majority now abandons the principles articulated in Millan and Mosley and seriously erodes these precedents. Here, the police, acting under an invalid search warrant, searched the apartment where defendant’s girlfriend, Jacquelin Glass, lived with the couple’s infant child. They discovered and seized a gun and drugs. Both defendant and his girlfriend *367 were charged with constructive possession of these items and both moved to suppress on the basis of the invalid warrant. Their motions were denied and, after a joint trial, both were convicted. On trial, the proof against defendant consisted entirely of evidence that he had dominion and control over the apartment where the contraband was found. Based on the court’s charge with respect to constructive possession, the jury found that the proof was sufficient to establish defendant’s guilty possession of the items (see, Penal Law § 10.00 [8]). In addition to proving that defendant’s girlfriend, Jacquelin Glass, and their child lived there, the People established that a dresser in the apartment contained men’s clothing and toilet articles; another dresser contained a shoe box with a wallet and various items of identification bearing defendant’s name; other items identifying defendant as the owner were found elsewhere in the apartment, including a temporary driver’s license, birth certificate, unopened mail addressed to defendant, and an address book with his parole officer’s card.
On Jacquelin Glass’s appeal to the Appellate Division, that court declined to adopt the "totality of circumstances test” as applied to the search warrant (see, Illinois v Gates, 462 US 213) and held the warrant invalid under the Aguilar-Spinelli rule (see, Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410). Accordingly, it dismissed the charges (see, People v Glass, 136 AD2d 892). The court likewise dismissed the charges in defendant’s appeal. Applying Millan and Mosley, the court disagreed with the suppression court and held that "the People may not predicate the charges against defendant on the theory that he constructively possessed the drugs * * * and simultaneously deprive him of standing to challenge the legality of the search” (139 AD2d 946).
I
As a result of the majority’s reversal of the Appellate Division and its reinstatement of the judgment, defendant— charged with criminal possession based on what he states was a tenuous connection with his girlfriend’s apartment — stands convicted and sentenced on evidence obtained from a concededly invalid search warrant. His girlfriend, however — who, as the tenant and occupant of the apartment, could have had no defense to a claim of constructive possession — was permitted to challenge the search. She did so and, on her appeal, the charges were dismissed. She now remains free.
*368 The consequences of the rule the majority adopts today are best illustrated by what is permitted in this case. The People may charge a defendant with possession of an item based solely on dominion and control over the place where it is found; they may have in their files sufficient evidence of defendant’s dominion and control of the place to secure an indictment from the Grand Jury, to satisfy the court that there is a prima facie case, and to defeat defendant’s motion to dismiss the indictment on the Grand Jury minutes (see, CPL 210.20, 190.75); they may subsequently adduce sufficient evidence of defendant’s dominion and control over the place to secure a conviction from the jury; and yet, the People may withhold this evidence of dominion and control in opposing defendant’s suppression motion and successfully contend that his admitted connections with the place are insufficient to let him contest the search.
Aside from the obvious unfairness of such a rule, it is immediately apparent that the rule works to the detriment of the innocent defendant. For if a defendant’s connection with the place is doubtful and if the People’s evidence can be refuted or explained away, the defendant is on the horns of a dilemma. If he tells the truth, he cannot, under the rule adopted today, set forth in his moving papers or in his suppression testimony sufficient evidence of dominion and control over the area to contest the illegal search. He must give up his attack on the search and stake all on his ability to refute the People’s proof at trial.[3] Under the constitutional *369 principle of Millan and Mosley, as correctly applied by the Appellate Division, this trap is avoided. It is assumed that, if the People have sufficient evidence of a defendant’s dominion and control over the place to charge and indict a defendant on the basis of constructive possession, there must be enough evidence of dominion and control to give defendant a right of privacy in the place and standing to contest an invalid search.
The majority offers no purposive, policy, or societal reason as the basis for its decision to all but jettison what, I think, is concededly the sound and just principle of Millan and Mosley. It is not contended that it is fair that defendant should be punished while his girlfriend — who unquestionably had dominion and control over the apartment — goes free; or that it makes sense that the People may possess sufficient evidence of a defendant’s control and dominion over a place to obtain an indictment and ultimately a conviction and yet block the suppression motion because defendant has no right of privacy in the place;* **[4] or that a rule which operates more favorably for the guilty than for the innocent can be a good rule. Nor is it explained why it does offend fundamental fairness to deny a defendant the right to contest the search of a place when his alleged possession of contraband, based on dominion and control over the place, is aided by a statutory presumption, but does not do so when there is no such presumption. Rather, the majority’s reasoning seems to be predicated on what it perceives to be the command of the law as it is.
I disagree with the majority’s conclusion that adherence to precedent (i.e., People v Ponder, 54 NY2d 160, supra; People v Rodriguez, 69 NY2d 159) compels it to reach the result that it does. The State and Federal Constitutions and the rule we *370 announced in Millan, in my view, clearly compel just the opposite result. There are, of course, cases when the social interests of symmetry and certainty to be served by adherence to precedent must give way to the social interests served by equity and fairness. (See, Cardozo, The Nature of the Judicial Process, at 112, 113 [1921].) Assuming for the moment that my colleagues are correct in their assessment of the existing precedential constraints on their decision, this would certainly be one such exceptional case. For, if my colleagues are correct that the law precludes application of the Millan-Mosley rule, the law most assuredly "ought not to” do so (see, Fuller, The Law in Quest of Itself, at 4-15 [1940]; Patterson, Cardozo’s Philosophy of Law, 88 U Pa L Rev 156 [1939]). But the focus of this dissent is primarily on what the majority seems to have adopted as its premise: that our precedents require the result it reaches.
The majority’s reasoning for the anomalous and, I think, manifestly unfair result is founded on these propositions: (1) that Millan is distinguishable because, in that case, the proof of dominion and control over the gun on which the guilty possession was based (Penal Law § 10.00 [8]) was aided by a statutory presumption (Penal Law § 265.15 [3]) while, in this case, constructive possession of the contraband was ascribed to defendant by proof of his dominion and control over his girlfriend’s apartment without benefit of such presumption; (2) that this case is in point with People v Ponder (supra) and the holding in that case compels a reversal; and (3) that an affirmance would be contrary to our holding in People v Rodriguez (supra). Each proposition will be addressed.
II
The constitutional rule of Millan-Mosley is grounded on fundamental fairness: that the State should not be heard to deny dominion and control over an area to defeat a defendant’s suppression motion while asserting such dominion and control to indict and convict him. In a sense, the doctrine embodies the principle of judicial estoppel. The State simply cannot have it both ways. It cannot use its evidence of dominion and control to indict and convict but pretend there is no such evidence when defendant complains that his constitutional rights were violated.
There can be no plausible reason why this rule should apply with any less vigor where the proof of defendant’s dominion *371 and control over a place — and, hence, his constructive possession of the contraband found therein — is aided by a statutory presumption than where it is not. The unfairness is the same. In each case the defendant can be convicted on unconstitutionally obtained evidence based on the People’s proof of the same dominion and control which would have constituted a sufficient right of privacy for defendant to contest the illegal search.
The fact that Millan — as contrasted with the case before us —involved a statute which gave rise to a rebuttable presumption of defendant’s dominion and control is a distinction without significance. In each case, the People had the burden of establishing sufficient facts for a finding of dominion and control over the area or place from which the jury could, if it chose, infer dominion and control over the item found therein (see, Penal Law § 10.00 [8]; People v Reisman, 29 NY2d 278, 285; People v Terra, 303 NY 332, 335; see also, 1 CJI [NY] 9.70). That the rebuttable statutory presumption in Millan permitted the People to establish a prima facie case of dominion and control by showing defendant’s presence in the automobile where the weapon was found is of no moment. The legal theory on which guilt is based remains the same — constructive possession over the area searched (see, People v Lemmons, 40 NY2d 505, 510; 3 CJI [NY] PL 265.15 [3]).[5]
The majority nevertheless takes the position that the holding in Millan was based solely on the fact that the People were aided by the presumption contained in Penal Law §265.15 (3) and, therefore, that the decision is inapplicable here. This is plainly not so. The majority ignores the fact that Millan relied on our earlier decision in Mosley, a case not involving a statutory presumption.[6] Our decision in Mosley *372 was premised on the same equitable principle at the root of our decision in Millan: it would offend fundamental fairness to permit the People, for the purpose of providing probable cause to arrest defendant, to impute to defendant possession of a weapon found on his confederate and, at the same time, deprive him of the right to contest the illegal search of the confederate which produced the weapon.
In sum, there is no principled distinction between Millan and the case before us. The injustice for each defendant is the same. The sheer unfairness of giving the State the advantage of asserting contradictory positions is the same. [7] The ultimate fact on which guilt is premised in each case is the same: constructive possession based on dominion and control over a space. Our court concluded in Millan that the contradictory positions taken by the People called for an application of the equitable principle we found embodied in the State and Federal Constitutions (see, People v Millan, supra, at 519-520, 522, n 7). That the People’s proof of dominion and control against defendant in Millan was aided by a presumption but is not so aided here is certainly no basis for treating this defendant differently. Fundamental principles of fairness do not turn on such nice distinctions.
Ill
The majority’s contention that People v Ponder (supra), dictates the result reached here is without basis. That case is simply not in point. In Ponder, a witness, who knew defendant, saw him running away from a hardware store where a robbery had just taken place and the owner had been shot and *373 fatally wounded. Defendant, the witness observed, had a black and silver object protruding from his jacket. The police, from their prior experience, knew that defendant might seek refuge in his grandmother’s house nearby. They searched the grandmother’s house for the weapon. In the basement, inside a washing machine, they discovered a sawed-off .22 caliber rifle.
Unlike the case at bar, there was no claim that defendant’s possession of the weapon was constructive possession or that his possession was based in any way on his allegedly exercising dominion and control over the place where it was found. On the contrary, the police had direct evidence that defendant had used the weapon in the robbery and had run with it from the scene. The weapon was sought as evidence in connection with charges stemming from the robbery and fatal shooting which had just occurred. Because it was clear that defendant could not have had a reasonable expectation of privacy in his grandmother’s house, or in the cellar or the washing machine, we held that he had no standing to challenge the search of his grandmother’s house. Obviously, under the settled rule that Fourth Amendment rights are personal to the person whose rights are violated and cannot be asserted by another (see, Alderman v United States, 394 US 165, 174), the defendant could not rely vicariously on the violation of his grandmother’s rights.
Ponder is virtually on point with Rakas v Illinois (439 US 128), a decision reached by the Supreme Court less than two years before it did away with the "automatic standing” rule (see, Jones v United States, 362 US 257) in its decision in United States v Salvucci (448 US 83, supra). In Rakas, the police seized incriminating evidence against defendants from the automobile in which they were riding. The evidence was obtained for use in robbery charges against them. The defendants neither owned the car nor the items found and, under the law, their status as mere passengers gave them no right of privacy for purposes of contesting the search. The court rejected their argument that because they were targets of the search and the evidence could be used against them they should be allowed to rely on the owner’s Fourth Amendment rights (see, Alderman v United States, 394 US 165, 174, supra).
The material elements in Ponder differed from Rakas in only one respect. In Ponder, there was the additional weapon possession charge (based on eyewitness testimony) stemming from the robbery and shooting. Had our court decided to stick *374 with the "automatic standing” rule of Jones, despite the Supreme Court’s overruling in Salvucci, we would have been compelled to give Ponder standing based solely on this possession charge, even though only his grandmother’s constitutional rights had been violated.
This case is not Ponder. Nor is it Rakas. Defendant is not seeking to rely on constitutional rights of a third person. Here, it is defendant’s own constitutional rights that were concededly violated and which he seeks to vindicate. Nor does this case involve "automatic standing” which, without more, would permit any defendant charged with any possessory crime to challenge any search resulting in the seizure of incriminating evidence — whether or not the search itself intruded upon defendant’s privacy right. Rather, this case involves the critically different Millan-Mosley principle. The People may not seek to prove defendant’s guilt on facts showing his dominion and control over a place and yet deny the defendant the benefit of those same facts to establish his right of privacy therein. If there is enough evidence of defendant’s lawful dominion and control to indict and convict, there is enough for defendant to contest the search. The principle is as simple as that.
Thus, despite the forebodings of the majority, an affirmance would clearly not disturb Ponder. That decision, together with Rakas and Alderman, will continue to stand for the sound proposition that a defendant — even one charged with a possessory crime — should not be permitted to move for suppression unless he can assert that his own constitutional rights were violated. He may not, in effect, get a free ride on someone else’s constitutional rights — i.e., in Ponder, the grandmother’s rights. Here, unlike Ponder, defendant seeks to assert his own constitutional rights based on the very facts with which the People seek to convict him. Under Millan-Mosley, defendant would be permitted to do this. Under the majority decision, he may not.
Finally, the scrupulous care with which the majority seeks to avoid any disturbance of precedent, I respectfully submit, is misdirected. It is not the apprehended effect of an affirmance in somehow eroding the court’s ruling in Ponder that should be the source of concern (for the usefulness of the Ponder rule, had we affirmed the Appellate Division, would have remained *375 totally undiminished as it did under Millan).[8] Instead, the proper focus should be the adverse impact that a reversal will have on the constitutionally based rule of Millan-Mosley and, consequently, on the rights of individuals charged with constructive possession who will be precluded from complaining about illegal searches — even when the State has sufficient evidence of their lawful possessory interests in the place searched to obtain a conviction.
IV
The final reason given by the majority for its holding is the assertion that an affirmance would be contrary to our decision in People v Rodriguez (supra). This too, I submit, is simply not so. First, the defendant in Rodriguez never raised the issue presented here and in Millan and Mosley. It must be noted, of course, that Rodriguez preceded our decision in Millan by two and one-half months. Indeed, the dissenter in Millan observed that the majority decision "casts considerable doubt” on our earlier decision in Rodriguez (People v Millan, supra, at 524 [Bellacosa, J., dissenting]). Second, and perhaps more importantly, there is no indication in the record in Rodriguez— unlike Millan and the present case — that defendant was charged with constructive possession based on the theory that he had dominion and control over the place searched. Although ammunition in Rodriguez, drugs, and drug paraphernalia were found throughout the apartment, it appears that the only items defendant was charged with possessing were hypodermic needles both in and beside the bed where he was sleeping and a bag of cocaine on top of which he was lying. Thus, it seems that the People were proceeding on the theory that defendant actually possessed the items. Since the People were not claiming that Rodriguez had dominion and control over the apartment and, therefore, constructive possession of its contents, there would have been no reason to make the *376 fundamental fairness-due process argument later accepted in Millan.
V
In studying the majority opinion for a satisfactory explanation of its decision to avoid application of the Millan-Mosley principle in this case, it is, I submit, reasonable to ask these questions:
1. Are there any reasons based on policy or principle offered to explain the decision? I think the answer is clearly no. The majority’s efforts to sustain its decision on policy grounds (e.g., "[p]lacing upon a defendant the burden of asserting an interest in the searched premises at the pretrial stage is fair” [majority opn, at 359]; it is a "long-established rule in this State that a defendant seeking suppression must assert personal standing” [id., at 360]; "the Ponder rule is more fair and less anomalous than anything [the dissenters] suggest” [id., at 363]) are the same arguments which confronted the court in Millan. But we considered them in Millan and concluded that the overriding concern was the unfairness of permitting the People to assert squarely contradictory positions. Nowhere does the majority explain how the presence or absence of a statutory presumption can be relevant to the concepts on which Millan-Mosley is based and the determining factor in the decision to avoid its application here.
2. Is the decision compelled by precedent and the command of positive law? Again, the answer must be no. For reasons stated, I am convinced that neither Ponder (see, part III, supra) nor Rodriguez (see, part IV, supra) compels the majority’s result. Indeed, Millan-Mosley compels just the contrary.
3. What then is the reason? The remaining possibility is that the decision reflects an unarticulated policy choice to retreat from Millan-Mosley. Repeated references to Ponder and to the pre-Millan decisions of Rodriguez and People v Gomez (67 NY2d 843), as well as the majority’s efforts to recast this case as one involving "automatic standing” to bring it within Ponder, suggest that this may be so.
But whatever the reason or explanation for the majority’s decision, the holding comes to this: the State may charge and indict a defendant on a set of facts which, if proven, would establish his guilt, and, at the same time, deny him the use of that set of facts as the basis for a constitutional objection which would defeat the charge. I am unable to accept this *377 proposition as one which comports with the deeply rooted traditions of fair play inherent in Anglo-American law and in the principles of due process which underlie our system of justice (see, Anti-Fascist Comm. v McGrath, 341 US 123, 162 [Frankfurter, J., concurring]; Wardius v Oregon, 412 US 470, 475-476; Malinski v New York, 324 US 401, 413-415; Lisenba v California, 314 US 219, 236; People v Isaacson, 44 NY2d 511, 520). In endorsing this proposition, the majority has taken a long step toward undercutting the principle of Millan-Mosley, a constitutional rule based on these fundamental concepts of due process. With this result, I must express my profound disagreement.
Accordingly, because the search was concededly invalid (People v Glass, supra), the indictment was properly dismissed. I, therefore, respectfully dissent and vote to affirm.
Chief Judge Wachtler and Judges Simons, Alexander and Bellacosa concur with Judge Kaye; Judge Hancock, Jr., dissents and votes to affirm in a separate opinion in which Judge Titone concurs.
Order reversed, etc.

. The rationale of Millan is that depriving defendant of the right to contest the search offends principles of fundamental fairness inherent in the Due Process Clauses of the Federal and State Constitutions (citing, inter alia, Anti-Fascist Comm. v McGrath, 341 US 123, 162 [Frankfurter, J., concurring]; see also, Wardius v. Oregon, 412 US 470, 475-476; Malinski v New York, 324 US 401, 414-415; Lisenba v California, 314 US 219, 236; People v Isaacson, 44 NY2d 511, 520).
Chief Judge Cooke, writing for the court in People v Isaacson (44 NY2d, at 520, supra), summarized the principle thus: "[Due process] embraces fundamental rights and immutable principles of justice (People v Terra, 303 NY 332, 334) and use of the term is but another way of saying that every person’s right to life, liberty and property is to be accorded the shield of inherent and fundamental principles of justice (see Ives v South Buffalo Ry. Co., 201 NY 271, 293, 295-296; see, also, People v Yamin, 45 Misc 2d 407, 417). Due process of law guarantees respect for personal immunities 'so rooted in the traditions and conscience of our people as to be ranked as fundamental’ (Snyder v Massachusetts, 291 US 97,105 [Cardozo, J.]).”

. The issue is not whether an individual has standing whenever charged with constructive possession of contraband.

. The majority’s rationalization for this "Catch-22” (see, People v Martinez, 136 Mise 2d 665, 666-667) of having to choose between two unacceptable alternatives is this: "[T]he circumstances that a defendant has an insufficient interest in the premises to claim standing will generally also tend to undermine any charge that the defendant was able to exercise dominion and control over contraband therein.” (Majority opn, at 362.) In other words, the majority reasons, if the defendant is unable to establish standing, the evidence of dominion and control would be insufficient and the defendant would be acquitted. But, this does not follow. If the defendant has been indicted, it presupposes that sufficient evidence of his dominion and control has been presented to the Grand Jury to constitute a prima facie case. It is, of course, possible that the jury, despite defendant’s claimed "insufficient interest in the premises”, will believe the People’s evidence and that, because of defendant’s inability to challenge the illegal search, he will be convicted.
Similarly, with respect to the fact that defendant’s girlfriend was able to challenge the concededly unlawful search while defendant was denied the same right, the majority explains that, "[h]ad he asserted a similar interest in the premises to that of his girlfriend, the result might well have been *369 otherwise.” (Majority opn, at 364.) The comment obviously assumes defendant’s guilt and that, in denying that he had dominion and control over the apartment, defendant was not telling the truth. But what if he were telling the truth? How does the rule work for the innocent defendant who has little or no connection with the place and is accused on the basis of false or mistaken evidence?

. Contrary to the majority opinion, the Millan-Mosley due process rule does not depend on "retrospectively * * * parsing the People’s trial proof’ (majority opn, at 359, n 2). Rather, the rule simply prohibits, on fundamental fairness grounds, the "squarely contradictory assertions of power by the Government” (Jones v United States, 362 US 257, 264) in charging defendant with the dominion and control over a place with evidence sufficient to obtain an indictment and, at the same time, denying defendant the right to contest an unconstitutional search of that place. Our reference to the fact that the People again use this evidence to convict is made only to emphasize the unfairness of allowing the State to take such contradictory positions.

. Contrary to the majority opinion (see, majority opn, at 362), the statutory presumption does not alter the People’s burden of proof. Even when Penal Law § 265.15 applies, the People must prove beyond a reasonable doubt that defendant had the ability and intent to exercise dominion and control over the contraband (see, People v Terra, 303 NY 332, 334). Section 265.15 (3) merely recognizes an inference based on common experience which the jurors would have been free to draw even without the statute and are free to reject with the statute (see, People v Reisman, 29 NY2d 278, 285-286; People v Terra, supra, at 335).

. In an effort to distinguish Mosley, the majority states: "Mosley plainly does not stand for the proposition that defendant had standing to litigate the validity of the search of his friend [Mackie]” (majority opn, at 362, n 4). These statements are flatly contradicted by the language of our decision in Mosley: "Inasmuch as the People rely on the discovery of the starter pistol *372 on Mackie as the basis for the arrest of defendant — that defendant constructively possessed the weapon concealed on Mackie’s person — defendant has standing to contest the frisk of Mackie” (68 NY2d 881, 883 [emphasis added]). Thus, contrary to the assertion of the majority, the issue in Mosley was whether defendant had standing to contest the search of Mackie. We determined defendant had standing by simply applying the principle later articulated as a constitutional rule in Millan — the same principle of judicial estoppel which the Appellate Division, in my view, properly applied here.

. The People’s contradictory positions here are reminiscent of the positions taken by the prosecution in Jones v United States (362 US 257) which provoked the following comment from Justice Frankfurter: "It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession of the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41 (e).” (362 US, at 263-264.)

. The majority opines that there are few cases in which a defendant would not have standing under the Millan-Mosley rule and that, therefore, the rule should be narrowly interpreted (majority opn, at 361). There is nothing in Millan indicating that our articulation of the principle was begrudging or suggesting that there should be any hesitancy in applying it where, as here, the facts call for it. Nor is there anything in Ponder indicating that the decision was intended to be extended to situations where defendants would be unfairly prevented from asserting their constitutional rights. But there are, of course, cases where Millan and Mosley would not give standing. Ponder and Rodriguez are two examples.