*161 OPINION OF THE COURT
Bellacosa, J.
We conclude that defendant has no reasonable or constitutionally recognizable expectation of privacy and, therefore, no standing to seek suppression of evidence seized in an initially warrantless search. The judgment of conviction for one count of criminal possession of drugs in the second degree was rendered upon defendant’s guilty plea after denial of the suppression motion. We affirm the order of the Appellate Division unanimously upholding that conviction.
Defendant was alone in a Bronx apartment, not his own, to which he had gone to purchase drugs. He was sleeping on a sofa bed when he was discovered and arrested. The only other connection he had with this apartment was that he had allegedly stayed over several times before. Indeed, a woman arrested elsewhere earlier in the day for driving without a license and possession of a weapon had informed police that defendant had committed serious felony assaults upon her in the apartment and that there were drugs and guns there. She then brought the police there and let them in with her key. Defendant had previously tried to leave the apartment with a stereo, also not his, but failed because the door had been locked in such a way as to prevent exit from within. When the police entered the apartment, they rousted the defendant from the sofa bed and, noticing a bulge under the bed sheet, discovered a plastic bag containing white powder. The white powder, later determined to be narcotics, was seized and the defendant was arrested shortly after 8:00 p.m. After the arrest, all waited in the apartment while a search warrant was secured, pursuant to which the police discovered narcotics, narcotics paraphernalia and 18 rounds of ammunition in addition to the previously plainly viewed bullets and hypodermic needles scattered around the apartment.
The invocation of the right to be secure against unreasonable searches and seizures (NY Const, art I, § 12; US Const 4th and 14th Amends) and its exclusionary enforcement (Weeks v United States, 232 US 383; Mapp v Ohio, 367 US 643) require personal standing to challenge the government’s action (Alderman v United States, 394 US 165; Rakas v Illinois, 439 US 128; United States v Salvucci, 448 US 83; People v Ponder, 54 NY2d 160).
The focal point of the constitutionally protected interest for purposes of the threshold standing requirement has evolved *162 over many years. Early cases defined the scope of the protection in terms of property interests. The culmination occurred in 1981 when we held that the search and seizure entitlement under our own State Constitution was sufficient if accorded only to those with standing and that there was no reason to apply a more generous standing rule than was allowed under the Federal constitutional standard (People v Ponder, 54 NY2d 160, supra; compare, People v Class, 63 NY2d 491).
Historically, in order to challenge the legality of a search a defendant had to show some possessory or proprietary interest in the property seized or the area searched (Olmstead v United States, 277 US 438). In Jones v United States (362 US 257), the Supreme Court expressed the nature of the interests protected by the Fourth Amendment in terms of privacy: "it is entirely proper to require of one who seeks to challenge the legality of a search * * * that he * * * establish, that he himself was the victim of an invasion of privacy” (id., at p 261). The court then announced that anyone "legitimately on [the] premises” had automatic standing to challenge the legality of the search (id., at p 267; see also, Katz v United States, 389 US 347; Mancusi v DeForte, 392 US 364).
Finally, in Rakas v Illinois (439 US 128, supra), the court refined this analysis into the legitimate expectation of privacy as the initial inquiry used to determine whether a defendant was entitled to claim protection under the exclusionary rule. In so doing the court significantly curtailed application of the "legitimately on [the] premises” test set forth in Jones. "[W]e believe that the phrase 'legitimately on [the] premises’ coined in Jones creates too broad a gauge for measurement of Fourth Amendment rights * * * [T]he holding in Jones can best be explained by the fact that Jones had a legitimate expectation of privacy in the premises he was using” (id., at pp 142-143).
Most importantly, the Rakas court began to define the boundaries of what may constitute a "legitimate” privacy interest. In considering whether the defendant may claim a privacy interest, a court must determine whether a claim of privacy "is reasonable in light of all the surrounding circumstances” (id., at p 152 [Powell, J., concurring]). Among the factors to be considered are whether the individual took precautions to maintain privacy, the manner in which the individual used the premises and whether the individual had the right to exclude others from the premises. The common-law evolution of this doctrine is illustrated by the fact that *163 the old property interest notion is not discarded but rather retained and built upon as one of the factors to be examined in erecting standing. Thus, the extent and nature of an individual’s property interest in a particular place or thing may be considered as one indicator of "society’s explicit recognition of a person’s authority to act as [one] wishes in certain areas” (id., at p 153).
A showing of a possessory or proprietary interest in the item seized by itself, however, is not the determinative factor on the issue of standing (Rawlings v Kentucky, 448 US 98). The number of times a person stays in a particular place, the length and nature of the stay, the indicia of connectedness and privacy, like change of clothes or sharing expenses or household burdens, are all factors which may alone or in combination with other factors support a reasonable expectation of privacy which is protected by the Fourth Amendment (see, People v Farinaro, 101 AD2d 891 [2d Dept]; People v Lewis, 94 AD2d 44 [1st Dept]; People v Van Buren, 87 AD2d 900 [3d Dept]). The burden of demonstrating the factors and their reasonableness to support the legal conclusion is on the defendant (Rakas v Illinois, 439 US 128, 149, supra; People v Ponder, 54 NY2d 160, 166, supra).
The principle that these rights are personal and may not be vicariously asserted (Simmons v United States, 390 US 377) is understandable in view of the underlying purpose of the exclusionary rule. "[T]here is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion * * * The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed * * * [W]e are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime” (Alderman v United States, 394 US 165, 174-175, supra).
The expressed dual rationale for granting automatic Fourth Amendment standing to defendants charged with possessory offenses (see, Jones v United States, 362 US 257, supra) has now been rejected (United States v Salvucci, 448 US 83, *164 supra). First, testimony given by a defendant in support of a motion to suppress can ño longer be admitted as evidence-in-chief of guilt of the crime charged (Simmons v United States, 390 US 377, supra). Thus, courts no longer grapple with the dilemma identified in Jones that, in order for a defendant charged with a possessory crime to establish standing, self-incriminating testimony had to be advanced which may be sufficient to convict of the very crime charged. Second, the tautological argument that the "vice of prosecutorial self contradiction” results without automatic standing has lapsed. This premise was that the prosecution had to argue that the defendant did not possess the property for the purpose of rejecting Fourth Amendment standing, while urging that the defendant did possess the goods for the purpose of establishing criminal liability. After Jones, it has become recognized that a prosecutor may simultaneously and consistently urge both points inasmuch as they relate to different juridical objectives (United States v Salvucci, 448 US 83, 90, supra; Rakas v Illinois, 439 US 128, supra).
The constitutional precedents as applied to the particular facts and circumstances of this case frame the inquiry as to whether the defendant had a reasonable expectation of privacy in the Bronx apartment. The evidence produced at the pretrial suppression hearing conclusively establishes that the defendant was a transient who had no indicia of legitimate or recognizable connection to the apartment where he was arrested or any relevant thing in that apartment.
In People v Ponder (54 NY2d 160, supra), the defendant sought to suppress a sawed-off, .22 caliber rifle fourid inside a washing machine in the basement of his grandmother’s hoúse. At the pretrial hearing, the defendant’s grandmbther testified that defendant was one of 30 grandchildren and did not live with her but occasionally spent the night. She also testified that the defendant did not stay in any particular room when he stayed there; that the defendant was not staying at her home when the search was conducted; and that the defendant had never slept in the basement nor used or had any interest in the washing machine. The trial court denied defendant’s motion to suppress and the defendant was convicted. This court upheld the search and the conviction and concluded the defendant could claim no reasonable expectation of privacy in the basement of his grandmother’s house.
The defendant’s relationship with the area searched in this *165 case is even more remote with respect to the reasonable expectation of privacy issue than that found wanting in Ponder. In Ponder, the defendant could at least point to a familial relationship with the owner of the premises. A familial relationship or other socially or lawfully recognized relationships, including house or apartment guests, may be significant factors along with others noted in Rakas (Rakas v Illinois, 439 US 128, 152-153, supra), which may support a standing base for Fourth Amendment protections with respect to persons not technically owners, renters or otherwise entitled to even a temporary possession of particular premises or even rooms or sections of premises.
But there is nothing even remotely close to that in this case, individually or collectively. Instead, we have the opposite. However, it is not the illegality of defendant’s purpose in going to the apartment nor his intended illegal activities while there which, standing alone, deprive him of a reasonable expectation of privacy. Indeed, there may be instances when, with evil motive and conduct, one possesses independently a real, a recognized and a legitimate expectation of privacy in premises and in things which is reasonable and protected against a warrantless search. Here, apart from the defendant’s illegal purpose and enterprise there is a vacuum of reasonable or legitimate indicia of privacy supporting any standing requirements.
The defendant in his own testimony admitted that his only relationship with the Bronx apartment was that his drug supplier resided there. He also testified that he had gone there for the sole purpose of obtaining heroin. His illegal motives alone may not deprive him of standing but neither can they confer standing. To grant defendant standing would mock the law and the principle.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed.