529 So.2d 1256 (1988)
The STATE of Florida, Appellant,
v.
Jerome William FISHER, Appellee.
No. 87-1787.
District Court of Appeal of Florida, Third District.
August 23, 1988.
*1257 Robert A. Butterworth, Atty. Gen., and Fariba Komeily, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Asst. Public Defender, for appellee.
Before HUBBART and DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
In the early afternoon of a spring day in 1987, City of Miami police officers  without benefit of a warrant, the owner or occupant's permission, or any colorable legal authority  walked into a two-room building described by one of them as a "disheveled, abandoned home" which looked "like a shack." Admittedly, they frequently went to this house "to look for illegal narcotics," and looking for illegal narcotics  and, of course, the purveyors and possessors of this contraband  was their business this particular day. When they walked through the unlocked front door,[1] they saw Jerome Fisher standing in the back room holding a plate containing what was later verified to be rock cocaine.
Fisher, charged with possession of this controlled substance, moved to suppress its introduction as evidence against him on the ground that the entry and search which disclosed Fisher's unlawful activity violated rights guaranteed him by the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution. The State, accepting that the entry and search did not comport with constitutional requirements, responded that Fisher had no standing to raise the issue of the illegality of the entry and search as he had no reasonable expectation of privacy in the premises entered and searched. The trial court, offended by the seeming lawlessness of it all, suppressed the evidence with the announcement  itself in disregard of well-established law  "I don't care whether this defendant has standing or not." The State appeals, and we reverse.
Notwithstanding the trial court's declaration to the contrary, a defendant must have standing based on a reasonable expectation of privacy to assert violations of constitutional prohibitions against unreasonable searches and to seek relief through the vehicle of suppression of evidence. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). To establish standing, the defendant must prove either that he has proprietary or possessory interest in the area searched or that there are other factors which create an expectation of privacy *1258 which society is willing to recognize as reasonable. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
Clearly, Fisher, who did not testify at the suppression hearing, established no possessory or proprietary interest in the house. Although his counsel pointed out that the police never bothered to ascertain who owned the house, the testimony of Officer Wright  the only witness at the hearing  was that Fisher had a separate address and never claimed that he held any interest in the house or was there by invitation of the owner or other lawful occupant. Compare State v. Suco, 502 So.2d 446 (Fla. 3d DCA 1986), aff'd, 521 So.2d 1100 (Fla. 1988); State v. Fernandez, 501 So.2d 648 (Fla. 3d DCA 1986). A defendant who does not testify at his suppression hearing and otherwise provides no explanation for his presence on the premises being searched has no standing to object to the search. United States v. Smith, 783 F.2d 648 (6th Cir.1986).
Nor does Fisher satisfy his burden to show a reasonable expectation of privacy by claiming that there was furniture, including couches and mattresses, present in the back room of the house where he was found. Although these facts arguably might serve to establish that the owner or lawful occupant of the premises had no intent to abandon the premises, they say nothing whatsoever about Fisher's relationship to the premises. Thus, in Noel v. State, 526 So.2d 1052 (Fla. 3d DCA 1988), a defendant who spent the night at an apartment several times during a three-week period and kept a change of clothes there was held to have no cognizable reasonable expectation of privacy in the apartment. Likewise, in People v. Rodriguez, 69 N.Y.2d 159, 513 N.Y.S.2d 75, 505 N.E.2d 586 (1986), the New York Court of Appeals held that a defendant found sleeping in an apartment that was obviously not abandoned  an apartment in which he had spent the night on several prior occasions  was held to be without standing to complain of the search of the apartment:
"The defendant in his own testimony admitted that his only relationship with the Bronx apartment was that his drug supplier resided there. He also testified that he had gone there for the sole purpose of obtaining heroin. His illegal motives alone may not deprive him of standing but neither can they confer standing. To grant defendant standing would mock the law and the principle."

Id. 513 N.Y.S.2d at 79, 505 N.E.2d at 590.
See also Odoms v. State, 714 P.2d 568 (Nev. 1986) (man found sleeping in vacated hotel room without standing to challenge police entry and subsequent seizure of weapon); Smith v. State, 702 P.2d 1063 (Okla. Crim. App. 1985) (defendant sitting on porch of house known to be frequented by drug users and prostitutes without standing to challenge police search of area surrounding porch; "no evidence was introduced regarding whether the defendant owned or lived in the house or whether he was even a guest in the house. Moreover, the defendant does not assert that he took precautions to maintain his privacy." Id. at 1064).
Finally, even assuming, arguendo, that, as the defendant suggests, the front door to this two-room house was shut, thereby arguably evincing the defendant's subjective expectation of privacy, the expectation is not one which society is prepared to recognize as reasonable. In United States v. Pitt, 717 F.2d 1334 (11th Cir.1983), the court refused to extend fourth amendment protections, that is, standing, to a defendant who had locked the door of the room which was searched. The room was in the garage owned by the defendant's girlfriend's landlady, the landlady had a key, and the defendant knew that others had access to and were using the room. The court said that the defendant was "an intruder, trespasser if you will, who assumed to lock a door which he had no legal right to lock on the premises of another and without the owner's consent... . [S]uch activity is not entitled to fourth amendment protection." Id. at 1337 (emphasis in original). Thus, Fisher's expectation of privacy would not have been recognized even if he had bothered to close the doors to and in the two-room shack.
*1259 Reversed and remanded for further proceedings.
NOTES
[1] While the record makes clear that the door was unlocked, it is not clear whether it was open or shut.