OPINION OF THE COURT
Rose L. Rubin, J.
In issue is whether the gathering of documentary evidence, by an investigator for a law enforcement agency, from the premises from which the defendant had earlier been evicted *721 constitutes an improper search and seizure in violation of the defendant’s constitutional rights. The defendant seeks to attack the eviction collaterally in the hearing on his motion to suppress the documentary evidence.
Defendant, charged with the crimes of grand larceny in the third degree, offering a false instrument for filing in the first degree (44 counts) and falsifying business records in the first degree (2 counts) moved, pretrial, to suppress the physical evidence, medical records which came into the possession of the law enforcement officers on September 13, 1990. A Mapp hearing was held. Eluid Ramirez, Jr., a special investigator for the New York State Office of the Special Prosecutor for Medicaid Fraud Control, testified for the People. The defendant testified on his own behalf.
Based on the credible evidence adduced at the hearing, the court makes the following findings of fact and reaches the following conclusions of law:
FINDINGS OF FACT
Eluid Ramirez was assigned to the investigation of a Medicaid provider, the defendant. In December 1989, he went to 23 East 115th Street, New York County, where he met with Dr. Del Gizzo. He observed that the premises were occupied as medical offices. In the same month, December 1989, the defendant notified the United States Postal Service to forward his mail to his home in New Jersey for one year. A month later, Mr. Ramirez returned to the building. Although it was the middle of the day, the medical facility was closed. He spoke to Delores Bradley, who informed him that Dr. Del Gizzo was no longer at the premises. She referred him to Jose Colon, the owner of the building. In turn, Mr. Colon referred him to a Sanford Galinsky, who, he said, handled all of his affairs in regard to that property. That afternoon, Mr. Ramirez spoke with Mr. Galinsky on the telephone. Mr. Galinsky informed him that Dr. Del Gizzo had last paid his rent in December 1989, but had not been seen since, and that the landlord intended to start a civil action against Dr. Del Gizzo.
On September 12, 1990 Mr. Galinsky notified Mr. Ramirez that Dr. Del Gizzo had, in fact, been evicted from the premises. He further stated that the premises had already been rented to another tenant and that he was going to "trash” 15 to 20 boxes or bags of medical records which were still on the premises. Instead of trashing them he offered to turn them *722 over to Mr. Ramirez. Mr. Ramirez was instructed by his superiors to accept the records.
On the same day, Mr. Ramirez contacted Mr. Colon and informed him that, on September 13, he was going to pick up the medical records which Mr. Galinsky was planning to trash. On September 13, Ramirez, together with two other investigators, John Cipriani and George Daniels, came to the premises. They were greeted by Jack Pinaigus, who had been expecting them. After identifying themselves, they walked through the offices and gathered records from three different rooms. Some were in plastic bags, some were in boxes. The premises, in total disarray, were being renovated. They used Mr. Pinaigus’ flashlight, because the electricity was turned off. The investigators gathered 22 bags and boxes and loaded them into a van. They gave Mr. Pinaigus a receipt.
The People introduced into evidence documents relating to the eviction proceeding, the judgment of eviction and the warrant of eviction. Judgment was entered June 28, 1990 awarding possession to the landlord for nonpayment of rent from January through May 1990. The landlord caused execution to be issued on the judgment. On July 31, 1990, the marshal sent the customary 72-hour notice of eviction by certified mail, return receipt requested. Significantly, Dr. Del Gizzo acknowledged receipt in August 1990 of the notice of eviction. Eviction took place August 7, 1990.
Dr. Del Gizzo testified that he had been suspended from the Medicaid program on October 24,1989. In November 1989, the landlord requested access to the premises to make certain necessary plumbing repairs. In December 1989, Dr. Del Gizzo gave Mr. Colon a key to do the work. He returned to the premises in late January 1990 and found the office in disorder. He returned again in late February or early March of 1990 and again on June 1, 1990. His lease extended to 1995. Because the office was still in disarray, he refused to pay the rent. His last rent payment was made in December 1989. The affidavit of service of the notice and petition to evict purports to recite service on him at the office on May 31, 1990. Dr. Del Gizzo denied he was at the premises on May 31, 1990 or that he was ever served. He stated that he subsequently received an eviction notice and went to his office to attempt to gain possession of his medical records. He testified that he found that the locks had been changed. He says he attempted to contact Ms. Bradley and Mr. Colon’s office but no one answered the telephone. In October 1990, he hired counsel to *723 challenge the alleged wrongful eviction. He stated that he did not learn that his records were in the possession of the Medicaid frauds unit until January or February of 1991. He made no meaningful effort by legal proceedings to remove the records before or after receiving the notice of eviction.
According to Dr. Del Gizzo, he had met with Mr. Ramirez several times in October 1989. In April 1990, Mr. Ramirez had telephoned him at his home in New Jersey requesting that Dr. Del Gizzo turn over the medical records for his 10,000 patients. Dr. Del Gizzo responded that he would comply if a subpoena were served on him. No subpoena was ever served upon him and he never heard from Mr. Ramirez thereafter. He also testified that he never intended to abandon the records.
CONCLUSIONS OF LAW
In a motion to suppress physical evidence, the People have the initial burden of going forward to show the legality of the police conduct. Once the People have met this burden, the defendant must prove by a preponderance of the credible evidence that the physical evidence should be suppressed (People v Di Stefano, 38 NY2d 640 [1976]; People v Chi Lau, 171 AD2d 581 [1st Dept 1991]).
It is the People’s position that they obtained abandoned property, voluntarily offered to them by a landlord in possession of premises, who was preparing to trash the items. There was no search and there was no seizure of property. This court has before it a warrant of eviction, duly executed as provided for by its terms, pursuant to which the landlord obtained possession of the premises. Dr. Del Gizzo seeks to attack that proceeding collaterally. However, a presumption of regularity attaches to the eviction proceeding, which, until vacated, must be accorded to the judgment of the Civil Court of the City of New York.
Moreover, Dr. Del Gizzo’s version of the course of events lacks credibility. He concedes that he surrendered his key to the premises to the landlord in December 1989 and that he paid no rent thereafter. He testifies that he visited in January, March and June 1990, but took no action to assert control over the premises or the records therein. While he denies being served, he admits having received the notice of the eviction and, thereafter, of visiting the premises. He says he found the locks changed. He telephoned Ms. Bradley, Mr. *724 Colon and Mr. Galinsky, the agent, the owner and the person in charge of the premises, respectively, but was unable to complete the calls to any of them. He did not seek to meet Ms. Bradley on the premises or Mr. Colon or Mr. Galinsky in their respective offices. He surely had reason to be concerned about the records at that point, if he truly had not intended to abandon them. Yet he did nothing. The foregoing weighs heavily in favor of a conclusion of abandonment.
Upon the execution of the warrant of eviction, Dr. Del Gizzo no longer had any proprietary interest in the premises and thus no legitimate expectation of privacy in the premises (see, People v Wesley, 73 NY2d 351 [1989]; People v Rodriguez, 69 NY2d 159 [1987]). This is particularly the case where he took no action with respect to the notice which he had received.
Thus, the People have met their initial burden of showing the legality of the conduct of the investigators. Defendant has failed to spell out a search or seizure. Accordingly, defendant’s motion to suppress the physical evidence is denied.