■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FELIBERTO CORONA, Appellant. [614 NYS2d 722] —Judgment, Supreme Court, New York County (Mary Davis, J., at suppression hearing; Richard Carruthers, J., at trial), rendered January 25, 1990, convicting defendant Feliberto Corona, after a jury trial, of criminal possession of a weapon in the third degree and sentencing him, as a second felony offender, to a term of 2½ to 5 years, reversed, on the law, suppression of the gun is granted, and the indictment is dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

On November 17, 1988, at approximately 2:00 A.M., defendant and Melinda Alvarez* were stopped by two security guards as they were leaving the Hotel Martinique with boxes containing appliances, cameras and various other personal belongings. Defendant was also carrying a large, maroon suitcase which he placed on the floor beside him when confronted. The night manager of the Hotel testified that he did not recognize either Ms. Alvarez or defendant as residents of the Hotel and, when Ms. Alvarez refused to produce identification after being brought to the manager's office, he called the Police and reported a burglary in progress.

The security guards testified that prior to the arrival of the Police, defendant opened the suitcase a number of times and, on one of these occasions, he removed an object wrapped in cloth which, when returned to the suitcase, did so with a "thunk". Police Officers Joseph Gilberti and Gregory Kelly arrived shortly thereafter and first spoke with the manager before approaching defendant and requesting identification. It was during this initial contact that defendant identified the suitcase as belonging to him.

---

* Ms. Alvarez was arrested along with defendant, but the charges against her were subsequently dropped.

Both security guards agreed at trial that Officer Gilberti then searched through the suitcase and found nothing. One of the security guards then testified that he approached Officer Gilberti and told him "I believe he may have a weapon" in the suitcase. Officer Gilberti then allegedly searched the bag a second time and recovered the gun and 15 rounds of ammunition, which apparently was in a case within the suitcase. At that juncture, the defendant was approximately three to four feet away from the suitcase.

In contrast to the foregoing, Officer Gilberti testified that he asked defendant for identification and defendant replied that it was in his suitcase. Defendant then allegedly opened the suitcase, with the flap toward Officer Gilberti, blocking his view, and began rummaging through the bag. It is at this juncture Officer Gilberti testified that he was approached by one of the security guards, who informed him that the suitcase might contain a gun. Officer Gilberti then purportedly told defendant to move away from the suitcase and, after searching the bag, recovered the gun and the ammunition. Defendant was subsequently handcuffed and arrested.

At the suppression hearing, defendant testified that while he sat in a chair in the hotel lobby, the Police Officers searched four bags which were situated approximately 15 feet away from him. Defendant continued that once the Officers found the gun in one of the bags, they asked for his identification, which he produced from a wallet which had been located in his pocket. On cross-examination and later on re-cross, defendant testified: that he never had possession of the suitcase, which was approximately 15 feet away when the Police Officers opened it; that he had never opened or carried the suitcase; and that the suitcase was not his.

The hearing court subsequently denied suppression, holding that defendant did not have standing to contest the search despite the People's evidence to the contrary, as defendant failed to meet his burden of establishing a legitimate expectation of privacy. We now reverse.

It is well settled that at a suppression hearing, defendant has the burden of establishing standing by demonstrating a personal, legitimate expectation of privacy (see, People v Whitfield, 81 NY2d 904; People v Wesley, 73 NY2d 351; People v Cedeno, 193 AD2d 540, lv denied 82 NY2d 715; People v Alvaranga, 198 AD2d 286, lv granted 83 NY2d 802) and that this burden may be buttressed by evidence educed from the People's case (People v Whitfield, supra, at 906; People v Gonzalez, 68 NY2d 950).

While the ultimate burden is upon defendant to establish that he had a reasonable expectation of privacy in the area of the search *(see, Terry v Ohio,* 392 US 1; *United States v Salvucci,* 448 US 83; *People v Ponder,* 54 NY2d 160), we have previously held that: "[T]he operative facts relevant on the issue may be gleaned from the record as a whole, including the account of the events offered by the police officer." *(People v Gonzalez,* 115 AD2d 73, 78, *affd* 68 NY2d 950; *see also, People v Sutton,* 91 AD2d 522.)

A review of the testimony at the suppression hearing reveals that Justice Davis found both Officers Gilberti and Kelly to be credible and that, with slight variations, both testified that defendant stated his identification was in the bag, that he opened the suitcase to find it, and that he had had control of the bag. On the other hand, it is also quite clear that defendant's credibility was in question as his sworn testimony at the suppression hearing (that he did not own, carry or open the suitcase) contradicted the statements contained in his motion papers prior to the hearing which, in fact, prompted the hearing.

Since the Hearing Court explicitly found the testimony of Officers Gilberti and Kelly credible, the court would had to have found that defendant had possession and control of the suitcase in issue since that was the unequivocal testimony of the officers. The decision to deny suppression, based solely on the limited and questionable testimony of defendant, was contrary to the court's own finding of the operative facts in this case. In conclusion, the court failed to consider those facts relevant to the issue of standing as supported by credible evidence found by the hearing court.

Further, it would seem to be an inequitable result considering that the hearing court totally disregarded substantial evidence, found to be credible, in denying suppression, while on the other hand the same evidence was used at trial to convict defendant of the crime charged.

After reviewing the record as a whole, there is no doubt that defendant had standing to contest the search of the suitcase and we so find that defendant had such standing.

Once it is established that defendant had standing, the issue becomes whether the Police Officers had probable cause to conduct the search. At this point, we agree with Justice Davis that the Officers did not have probable cause to search the suitcase (the defendant, at that point, had not even been placed under arrest) and that no exigent circumstances ex-

isted which would justify the search *(see, People v Gokey,* 60 NY2d 309; *People v Smith,* 59 NY2d 454). Justice Davis, after finding defendant lacked standing to contest the search, stated: "[H]ad I found that the defendant did have standing * * * I would have accorded him the benefit of my finding * * *. [T]he officer certainly was justified in approaching and making inquiry of the defendant * * *. I don't believe he had any articulable basis for believing that the defendant was armed."

We find that the Police, on the basis of the radio run reporting a burglary in progress, had a sufficient basis to approach defendant and request information *(see, People v De Bour,* 40 NY2d 210, 223; *People v Hollman,* 79 NY2d 181) and we recognize that in certain situations the Police, in fear of their own safety, are entitled to make a limited search for weapons *(see, People v Jackson,* 79 NY2d 907; *People v Torres,* 74 NY2d 224). However, we find no reason to disturb the IAS Court's conclusion that the Officers did not have an articulable reason to believe defendant was armed, nor did they possess an immediate fear for their safety as defendant moved away from the suitcase when ordered to and was not, in any manner, acting in a threatening fashion. The hearing court discounted the security guard's alleged warning about a gun on the basis that the guard would not have calmly watched defendant search the bag if he really believed that defendant was in possession of a gun. As a result, we conclude that the gun and the ammunition were the fruit of an illegal search and should have been suppressed. Concur—Murphy, P. J., Williams and Tom, JJ.

Kupferman and Asch, JJ., each dissent in a separate memorandum and concur in each other's memorandum, as follows: Kupferman, J. (dissenting).

I would affirm.

The defendant denied ownership of the suitcase and he further testified that he had never carried it, opened it, or touched it, thus establishing that he had no expectation of privacy therein.
Asch, J. (dissenting).

I concur in the dissent by Justice Kupferman. I would add the following analysis of the legal principles presented in this case.

The majority reverses on facts which, as a matter of law, compel affirmance of defendant's conviction and denial of his motion to suppress the evidence.

The majority erroneously accepts the defendant's attempt to cite the People's evidence at trial to show that defendant had standing. It also notes that: "[I]t would seem to be an inequitable result considering that the hearing court totally disregarded substantial evidence, found to be credible, in denying suppression, while on the other hand the same evidence was used at trial to convict defendant of the crime charged". This disregards the quite evident fact that the respective purposes of a suppression hearing and a trial are quite different. A prosecutor may "simultaneously and consistently urge" that the defendant did not possess the property for the purpose of rejecting Fourth Amendment standing and that the defendant did possess the goods for the purpose of establishing criminal liability *(People v Rodriguez,* 69 NY2d 159, 164).

A defendant seeking suppression cannot rely upon the trial evidence to support that claim. "[T]he propriety of the denial [of a motion to suppress] must be judged on the evidence before the suppression court" *(People v Gonzalez,* 55 NY2d 720, 722, *cert denied* 456 US 1010). I agree with the majority that the defendant's standing may be supported by evidence gleaned from the People's case *(People v Whitfield,* 81 NY2d 904). However, this evidence must be "gleaned" only from that admitted at the suppression hearing. Evidence subsequently admitted on trial cannot be used to support standing *(People v Gonzalez, supra,* at 721-722; *see also, People v Dodt,* 61 NY2d 408, 417).

In any event, the defendant continues to bear the burden of asserting standing at the hearing *(People v Whitfield, supra,* at 905-906 ["At a suppression hearing, a defendant has the burden of establishing standing"]). Here, however, the defendant did not bear this burden of asserting standing at the hearing. Instead, he unequivocally and emphatically denied *any* possessory interest in the bag or its contents. As soon as defendant testified at the hearing, under oath, that the suitcase did not belong to him, and that he had never carried, pushed, or even opened or touched it, he effectively removed the *only* basis for the suppression hearing.

The majority misapprehends the purpose of the hearing. Quite simply, upon defendant's categorical denial of any relationship to the suitcase, there was no longer any factual issue of standing to be decided, and, therefore, the suppression court properly denied the motion to suppress on that ground, at that point, disregarding the evidence submitted by the People.

The majority, in disregarding defendant's sworn testimony

that he had no privacy interest in the evidence, subverts the purposes of the suppression rule. "Formulated as a pragmatic response to law enforcement procedures violative of individual liberties, the exclusionary rule has never enjoyed the stature of an end in itself, but, rather, has served solely as a means to an end: a remedial device operating essentially upon a principle of deterrence" *(People v McGrath,* 46 NY2d 12, 21, *cert denied* 440 US 972). "To grant defendant standing" under these circumstances "would mock the law and the principle" *(People v Rodriguez, supra,* at 165).

Even assuming that defendant had continued to assert standing, the majority incorrectly relies on the suppression court's dicta that it probably would have granted the motion had defendant shown standing.

Accepting the truth of the testimony of the officers, as both the suppression court and the majority herein do, once the police learned from the hotel manager and the security guards that defendant and another had been carrying out boxes and suitcases from the hotel, at which they were not registered, at 2:15 A.M., the officers had probable cause to *arrest* defendant for burglary even before the search of the bag and the discovery of the gun. However, even conceding that there was insufficient ground for arrest, there was, at the very least, a "reasonable suspicion" that defendant and another had committed, were committing or were about to commit a felony or misdemeanor *(People v De Bour,* 40 NY2d 210, 223), and, therefore, the police had the right to approach and investigate. A "reasonable suspicion" of criminal activity will justify a "forcible stop and detention" and also the authority to frisk for weapons for the officer's own safety *(supra,* at 223). Here, the *accepted* testimony was that defendant said his identification was in his suitcase and lifted the flap of the suitcase. His actions could not be seen by the police at this time and his hands were hidden inside the suitcase. In addition, a security guard informed the officer, at the same time, that defendant might have a weapon in the suitcase. While the hearing court might have been analytically correct in "discounting" the security guard's warning, the officers at the scene were entitled to rely on it. Under all these circumstances, the officer was justified in searching the bag himself, to ensure his safety and that of the others in the vicinity *(supra; see also, People v Benjamin,* 51 NY2d 267, 271 ["It would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety"]).