OPINION OF THE COURT
Jack Mackston, J.
Defendants move to controvert the search warrant. Pursuant to stipulations a hearing was conducted to determine whether or not there was probable cause to issue a search warrant and whether the execution thereof was proper.
At the hearing the People called as their witnesses Thomas Griffin, Richard Simon, and Detective Karen Lutz of the Nassau County District Attorney’s office.
At the close of the hearing the court reserved decision to permit time for the parties to obtain a transcript of the minutes of the hearing and to submit memoranda of law.
From the credible evidence adduced at the hearing and memoranda of law the court makes the following findings of fact and conclusions of law.
Standing
In lieu of motions the parties stipulated to a pretrial hearing on the issue of probable cause to issue the search warrant. By so stipulating the People did not contest the defendants’ standing to move to suppress. The focus of the hearing was to determine whether there was probable cause to issue a search warrant for the defendants’ place of business, "Wall of Fame”. The People’s objection to defendants’ standing only surfaced in the middle of the suppression hearing when they offered as an exhibit a copy of the ex parte order of attachment granted pursuant to CPLR article 13-A. Both sides briefed the court on the relevance of the ex parte order to the defendants’ rights of privacy in the Wall of Fame premises in their posthearing memoranda of law.
Since standing was not contested by the People prior to the hearing and no evidence was adduced at the hearing other than the existence of the ex parte order, the court finds that the defendants have standing to challenge the issuance of the search warrant and the seizure of their property.
*438 Nonetheless, even if the People had not initially stipulated to the hearing but objected, raising lack of standing, the court would find that the defendants have standing to move to suppress evidence for the reasons as follow.
The People argue that as of October 7, 1994, the date of the order of attachment, the defendants lost all rights of privacy in their property and that as a consequence thereof they lack standing under the Fourth Amendment of the United States Constitution and the New York State Constitution to challenge the reasonableness of the State’s search and seizure of their property from Wall of Fame.
At the outset the court notes that it is not called upon and is without authority to rule on the merits of the ex parte provisional remedy which was granted in the Supreme Court of the State of New York, Nassau County. (See, CPLR 1311 [4].)
The crux of the People’s position rests on the fact that the ex parte order recites that the District Attorney’s office, as the claiming authority, had the right to seize all the items in the store and to maintain those items as custodian. The People conclude that this provision in the order extinguished any privacy and Fourth Amendment rights the defendants had.
According to the People, on October 11, 1994 they arrested Beram and served the ex parte order of attachment. Absent, however, from their papers, is an averment that the claiming authority complied with statutory requirements and moved to confirm the order within five days of its service of the order upon said defendant. Both the CPLR and the order require that within five days after a levy is made (service of the order upon defendant) that the claiming authority must move to confirm the order. (CPLR 1320, 1317 [2].) Failure to timely move after the levy renders the attachment order ineffective and the order will be vacated on motion. (CPLR 1317 [2].) Thus, this court is without proof that the order was in effect at the time of the People’s application for the search warrant and its execution.
Even if the court was provided proof that the order was in effect at the time of the search and seizure of defendants’ property, it has not been persuaded by the People’s arguments or the submitted case law that the provisional order of attachment in any way impinges upon defendants’ rights under the Fourth Amendment and the State Constitution to challenge the State’s authority to search and seize their property. In support of their contention the People offer two cases, People v Rodriguez (69 NY2d 159) and People v Natal (75 NY2d 379). In *439 neither case is the Court asked to decide whether an individual’s Fourth Amendment rights against unreasonable search and seizure are circumscribed by a civil, provisional remedy granted ex parte under the New York civil forfeiture statute. If the court were to adopt the People’s reasoning it would permit a broadly cast attachment order to serve the dual purposes of preserving property and assets of the defendants for future satisfaction of an anticipated forfeiture judgment against them in the civil action, and also serve as a prosecutorial tool in the criminal action to search and seize defendants’ property as evidence of their criminal conduct. Indeed, by operation of law the civil forfeiture action is stayed during the pendency of the criminal action and the court cannot grant a forfeiture judgment until a conviction has occurred. (CPLR 1311 [1] [a].) To agree with the People’s contention would result in the untenable situation that the District Attorney be relieved from compliance with the constitutional and statutory requirements for issuance of a search warrant by obtaining an ex parte provisional remedy of attachment granted on less than a showing of probable cause. (See, CPLR 1312 [3].)
The cases cited by the People are inapposite. In Rodriguez (supra) the Court held that the defendant did not have a legitimate expectation of privacy in an apartment, which was not his own, where he went to purchase drugs. The only connection the defendant had with the apartment, other than to purchase drugs, was that he had stayed overnight there on several occasions. The Court of Appeals held that the defendant had no reasonable or constitutionally recognizable expectation of privacy in the apartment, and therefore no standing to seek suppression of evidence seized in an initially warrantless search. (People v Rodriguez, 69 NY2d 159, 161.) In so holding the Court found that the evidence at the suppression hearing conclusively established that the defendant was a transient who had no indicia of legitimate or recognizable connection to the apartment where he was arrested or any relevant thing in that apartment. This court fails to see the analogy between the instant case and Rodriguez.
The Court of Appeals in Natal (supra) ruled that the defendant, who did not challenge the initial search and seizure of his personal items at the time of his arrest, had no expectation of privacy in such property. These items, which included the clothes the defendant was wearing and personal effects on him at the time of his arrest, were inventoried and held for the defendant by the county jail for safekeeping pending his release *440 from custody. Reviewing the Federal criteria for determining whether an arrestee’s privacy interest in personal possessions, held by police during incarceration, under "unobjectionable circumstances” invades any substantial privacy interest of the arrestee, the Court quoted the Supreme Court of the United States which suggested that a warrant would not be necessary in situations " 'where the clothing or effects [of an arrestee] are immediately seized upon arrival at the jail, held under the defendant’s name in the "property room” of the jail, and at a later time searched and taken for use at the subsequent criminal trial.’ ” (People v Natal, 75 NY2d 379, 383, quoting United States v Edwards, 415 US 800, 807.)
In the present case the search and seizure by the State did not involve personal items worn by the defendants at the time of their arrest and held by police for safekeeping pending their release from jail. Rather, it involves property located at the defendants’ place of business, secured by a provisional remedy granted ex parte in a civil proceeding. While Natal (supra) is not dispositive of the instant case it does provide guidance, as it sets forth the well-established standard for determining whether or not an individual has a constitutionally protected privacy interest in property. Such interest requires the existence of a subjective expectation of privacy that society is willing to recognize as reasonable. (People v Natal, supra, at 383, citing People v Rodriguez, 69 NY2d 159, 164-165, supra; People v Mercado, 68 NY2d 874, cert denied 479 US 1095.) Applying that standard to the facts of this case, the court must find that the defendants, at the time in question, had a legitimate expectation of privacy in their place of business and standing to challenge the search of Wall of Fame and the seizure of items of property contained therein.
Facts
The defendants concede that as of June 24, 1994, the date that Detective Karen Lutz purchased several items of sports memorabilia from defendant Beram at Wall of Fame, the target premises, there was probable cause for the issuance of the search warrant. It is argued that such probable cause, however, had ceased to exist at the time of the warrant application on October 21, 1994. Defendant contends therefore that the probable cause was stale on October 21, 1994 when the warrant was issued and that the evidence seized from Wall of Fame should be suppressed.
Defendants do not controvert any of the factual allegations set forth in the affidavit attached to the warrant application. *441 Defendants’ only argument is that the affidavit is devoid of any factual allegations of ongoing criminal activity after June 24, 1994.
At the hearing Detective Lutz testified that sometime before June 24, 1994 she spoke to two complainants, Joseph Lemeiux, the director of the Ted Williams Museum in Florida, and Thomas Griffin. Griffin told Lutz that in the latter part of April 1994, he had purchased a signed lithograph of Ted Williams and an autographed plaque of Ted Williams, Joe DiMaggio and Mickey Mantle from defendant at his store, Wall of Fame, located at 3267 Hempstead Turnpike, Levittown, Nassau County. At the time of purchase, Beram told Griffin that the lithograph and plaques had authentic Ted Williams signatures. Griffin, however, suspected that the signatures were forged and contacted Lemeiux who came to New York to inspect the items and visit Wall of Fame to determine whether the owner was selling memorabilia with forged Ted Williams signatures. Lemeiux believed the signatures on the lithograph and plaque were forged and that the defendant was selling other memorabilia with forged Ted Williams signatures.
In May of 1994 a 13-year-old Jonathan Heit filed a complaint with the District Attorney’s office concerning sports memorabilia he purchased from Glen Beram at Wall of Fame. Heit showed Lutz a Cal Ripken, Jr. plaque and a Ken Griffey plaque. Heit suspected that the signatures were forged. Lutz thereafter obtained from Mr. Ripken’s agent a sheet of sample Ripken signatures and from Mr. Lemeiux, a sheet of Ted Williams signatures.
On June 24, 1994 Detective Lutz, in an undercover capacity, purchased from Glen Beram at the Wall of Fame autographed memorabilia which he represented to be authentic. Those items included a Ted Williams, Joe DiMaggio and Mickey Mantle plaque, a Willie Mays, Nolan Ryan, Gary Carter and Johnny Bench plaque, a Don Mattingly photo and a Triple Crown ball.
After Lutz made her purchases at Wall of Fame she spoke to Gary Carter on August 5, 1994 at Shea Stadium. She showed him the plaque she purchased bearing his signature. He told her he definitely did not sign the item and then gave her a deposition to that fact. The deposition was annexed as an exhibit to the warrant application.
Detective Lutz thereafter turned over the items she purchased from Wall of Fame and the sample signature lists to Sergeant Dennis Ryan of the Nassau County Police Department, who is the handwriting expert with the Special Investí *442 gation Bureau. Lutz asked Ryan to determine if the signatures on the items were authentic. Ryan thereafter prepared a handwriting analysis of the items which indicated that the signatures were forged. The analysis, dated September 16, 1994, was included as an exhibit to the search warrant application.
Based upon her investigation Lutz applied for and was issued a search warrant for Wall of Fame on October 21, 1994. On October 26, 27, 28 and 31 the warrant was executed. On October 26, 1994 Richard Simon, a sports memorabilia dealer specializing in autographs, was asked by Lutz to aid her in identifying forged items at the Wall of Fame. Mr. Simon identified between 100 to 150 items which he believed were not legitimate. These items were set aside. On October 27, 1994 Detective Lutz used the assistance of another authenticator, Steve Verkman.
On October 28,1994 Lutz, accompanied by another investigator, Dennis Sheehan, packed and inventoried the items to be taken under the search warrant. On October 31,1994 the items were moved to her office at 310 Old Country Road in Mineóla.
Property removed from the store included business records, plaques, sports memorabilia bearing signatures of players from whom Lutz had obtained sample signatures and a handwriting analysis. Also seized were the items identified by Simon and Verkman as possible forgeries. The items seized were listed on the return.
Conclusions of Law
The court finds that there was probable cause for the issuance of the search warrant on October 21, 1994. The affidavit of Detective Lutz recited factual allegations which gave rise to probable cause to believe that the defendant Glen Beram was engaged in criminal activity selling forged sports memorabilia at the commercial premises known as Wall of Fame. Much of the information recited by Lutz was based on her firsthand knowledge of the activity and her personal observations. In such instance, the issuing Magistrate has before him facts or circumstances presented under oath or affirmation which provide probable cause. (People v Bartolomeo, 53 NY2d 225, 234.)
In order for defendants to succeed in controverting the warrant they would have had to establish that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by the affiant in the warrant applica *443 tion and that such statement was necessary to the finding of probable cause. (See, People v Bartolomeo, supra, at 235.) The defendants do not dispute the veracity of the factual allegations made by Detective Lutz. The only challenge is that they were stale.
While defendants cite several cases to support their proposition, these cases only buttress the conclusion that the factual allegations were not stale and that probable cause existed at the time of the warrant application and its issuance.
Although the last purchase of items from defendant Beram at Wall of Fame occurred on June 24, 1994, the investigation and analysis of the signatures continued well after that date. The handwriting analysis report prepared by Sergeant Ryan annexed as exhibit B to Detective Lutz’s search warrant application indicates that the analysis and report were completed on September 16, 1994. The deposition by Gary Carter attached to the application was signed on August 5, 1994.
Defendant quotes in his memorandum of law language from People v Clarke (173 AD2d 550), in which the Court succinctly noted: "probable cause is not to be determined by counting the number of days between the occurrence of the events relied upon and the issuance of the search warrant. Information may be acted upon as long as the practicalities dictate that a state of facts existing in the past, which is sufficient to give rise to probable cause, continues to exist at the time the application for a search warrant is made”. (People v Clarke, supra, citing People v Teribury, 91 AD2d 815; United States v Rahn, 511 F2d 290, cert denied 423 US 825; United States v Brinklow, 560 F2d 1003, cert denied 434 US 1047.)
The practicalities of the instant case lead this court to conclude that there was probable cause to believe that criminal activity and evidence of such existed at Wall of Fame on October 21, 1994. Based upon the separate transactions alleged to have occurred at the target premises outlined in the affidavit of Detective Lutz, it was logical for the issuing Magistrate to assume that other evidence of forgeries and criminal activity continued after June 24, 1994 and would be found at the defendants’ premises. (See, People v Teribury, supra, at 816.) The assessment of probable cause "depends largely upon the property’s nature”. (Supra, quoting United States v Brinklow, supra, at 1006.) The defendants ran a sports memorabilia business at the target location. The items purchased four months prior to the issuance of the warrant were of the same kind and nature as items which would normally be sold and stored by *444 defendant at the target location. Nor did the District Attorney’s office unnecessarily delay in its application. Indeed, time was needed to analyze the signatures to verify their authenticity. The results of the analysis provided the District Attorney with probable cause to believe that defendants were selling forged memorabilia.
Thus, the court finds that probable cause existed at the time the search warrant issued.
Finally, the court finds that the warrant was executed as authorized.
Accordingly, for all of the foregoing reasons the court denies defendants’ application to controvert the validity of the warrant and its execution.