Shamrock GAMBLE, Petitioner,

v.

Christopher ARTUZ, Supt. Greenhaven Correctional Facility, Respondent.

No. 97 CV 1875 NG.

United States District Court,
E.D. New York.

May 26, 1999.

Samuel Prato, Rochester, NY, for petitioner.

Steven Banks, Assistant Attorney General, of counsel, Eliot Spitzer, Attorney General of State of New York, New York City, for respondent.

## *MEMORANDUM AND ORDER*

GERSHON, District Judge.

Petitioner Shamrock Gamble seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Gamble was convicted after trial by jury in the New York State Supreme Court, Queens County, of Robbery in the First Degree, and was sentenced to an indeterminate prison term of

twelve and a half to twenty-five years (Bambrick, J.). Petitioner's sole contention in this petition is that he received ineffective assistance of appellate counsel because his appellate counsel failed to challenge the denial of a motion to suppress evidence that was used against him at trial, namely, food stamps, which he was alleged to have stolen.

## FACTS

On March 28, 1988, Money Center, Inc., a check cashing business in Long Island City, New York, was robbed of money and food stamps. Neal Booker, the manager of the Money Center who was present on the day of the robbery, identified petitioner, whom he had known for over ten years, as the assailant. The police failed to locate petitioner immediately following the robbery. Then, on April 29, 1988, Detective Louis Salinaro arrested petitioner Shamrock Gamble at 2292 West 8th Street in Brooklyn, New York. At this time, Detective Salinari also seized a quantity of food stamps from the premises.

### The *Mapp* Hearing

On November 1, 1988, a hearing pursuant to *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was held before the Honorable Joseph G. Golia to determine the admissibility of the food stamps. The sole witness for the prosecution was Detective Thomas Cruthers of the Queens Robbery Squad, who was not present at the arrest of petitioner and seizure of the food stamps. He testified that Detective Louis Salinari contacted him on April 29, 1988 and informed him that petitioner had been arrested and that approximately $7500 worth of food stamps had been recovered from his possession. H.[1] at 10. Detective Cruthers testified that he compared the serial numbers on these food stamps and that they matched the serial numbers of the food stamps stolen from the Money Center. H. at 10, 14. He did

not know the exact location where petitioner was arrested or whether Detective Salinari had obtained a warrant. H. at 20–21. Detective Cruthers also testified that he was not told by the arresting officers the location in the apartment where the food stamps were found. H. 20–21.

Petitioner testified that he was arrested at his girlfriend's apartment at 2292 West 8th Street in Brooklyn, New York. H. at 33. Petitioner testified that he "used to stay" either with his girlfriend, Parnice Parker, or with his mother, who also lives in Brooklyn. H. 35. He could not recall his girlfriend's apartment number. H. at 35. He testified that Detective Salinari and other officers rushed into the apartment when his girlfriend opened the door and that the police "started looking around the house." H. at 38–39. He testified that his girlfriend did not give the officers permission to search the apartment. H. at 39–40. Petitioner testified that he hid in the bathtub with the shower curtain closed. H. at 42. He stated that he was never shown an arrest or search warrant. H. at 34, 39. According to petitioner, the food stamps were recovered from a burgundy leather bag found in a bedroom belonging to a child of his girlfriend. H. at 41–42. When asked on cross-examination, "What room were you living in?" he answered, "In the room in the back, too, but not that room." H. 42. The police did not seize any property from the defendant's person. H. 34. Prior to the seizure of the food stamps, petitioner testified, he was confined by the police to a living room while officers were "looking all over in the house." H. 38.

On January 6, 1989, the hearing court issued a decision in which it denied defendant's motion to suppress. The court concluded that the food stamps in question were not seized from the defendant's person and that it was clear from the defen-

---

**1.** References to "H." are to pages of the transcript of the *Mapp* hearing held on November  1, 1988.

dant's own testimony that the residence from which the items were recovered was not the defendant's residence. The Court held that petitioner lacked the necessary standing to challenge the search of his girlfriend's apartment and seizure of the food stamps and denied his motion to suppress the physical evidence.

**The Trial**

At petitioner's trial, commencing April 25, 1989, the prosecution first called as a witness Neal Booker, the manager of the Money Center, who was present on the day of the robbery. Tr.[2] 68. Mr. Booker testified that petitioner, whom he had known for between ten and fifteen years, robbed the Money Center on March 28, 1988. Tr. 72–78. Mr. Booker testified that petitioner pulled a gun, forced him into the bathroom and then took approximately $23,000 in cash and $12,000 in food stamps. Tr. 76–78; 97.

Detective Salinari testified that he went to 2292 West 8th Street in Brooklyn, New York, on April 29, 1988 and was let into the apartment by its occupants. Tr. 165. He stated that he found petitioner fully clothed hiding in the bathroom tub with the shower curtain drawn. Tr. 165. Detective Salinari placed him under immediate arrest. Tr. at 165. Detective Salinari testified that he noticed some food coupon books on a chair in plain view as he was leaving, and he took the food stamps with him. Tr. 165–66. Detective Salinari testified that he placed the food stamps in a plastic hermetically sealed envelope and that the food stamps were subsequently vouchered and sent to the Property Clerk for safekeeping. Tr. 166. Trial counsel for petitioner objected to the admissibility of the food stamps on the ground that the prosecution's witnesses failed to demonstrate chain of custody; this objection was overruled. Tr. 170.

Detective Cruthers testified that he went to the 60th Precinct in Brooklyn on

April 29, 1988 to compare food stamps in connection with his investigation of the robbery of the Money Center. Tr. 146 Detective Cruthers testified that he examined the food stamps found in petitioner's girlfriend's apartment and verified that the serial numbers of some of the food stamps matched some of those taken from the Money Center. Tr. 150.

The prosecution also called Mr. Shane, the owner of the Money Center, who testified about the amount of currency and food stamps that was missing after the robbery. Tr. 139.

The defense called no witnesses.

The jury found petitioner guilty of Robbery in the First Degree.

**PROCEDURAL HISTORY**

The Appellate Division, Second Department, unanimously affirmed the conviction on April 13, 1992. *People v. Gamble*, 182 A.D.2d 703, 582 N.Y.S.2d 470 (2nd Dept. 1992). On direct appeal, petitioner's counsel initially raised two issues: (1) that the trial court's failure to employ a *Sandoval* compromise, *People v. Sandoval*, 34 N.Y.2d 371, 375, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), violated petitioner's due process rights; and (2) that the trial court's failure to allow petitioner to argue in his summation that the complainant had colluded with him violated his due process rights. Petitioner then filed a *pro se* supplemental brief in which he raised four additional claims: (1) that the trial court improperly ruled that he did not have standing to challenge the search of his girlfriend's apartment; (2) that he was unconstitutionally denied the right to confront the officer who conducted the search at the *Mapp* hearing; (3) that the prosecution failed to establish a proper chain of custody for the seized evidence; and (4) that cross-examination by the prosecutor

---

**2.** References to "Tr." are to pages of the transcript of the trial held on April 25–28, 1989.

was improper. The Appellate Division rejected petitioner's challenge to the admissibility of the food stamps found in his girlfriend's apartment. The Court found that petitioner did not "sustain his burden of showing that he had a reasonable expectation of privacy in the apartment where food stamps were seized so as to be entitled to claim protection under the exclusionary rule." *Gamble*, 182 A.D.2d at 703, 582 N.Y.S.2d 470. The Court noted that "[a]lthough the defendant vaguely asserted that 'he used to stay' with his girlfriend and at his mother's apartment, located at different addresses, he did not know in which apartment his girlfriend lived." *Id.* The Court found that the record was "devoid of any evidence establishing the nature or length of the defendant's occupancy of the premises, or any indicia of a legitimate or reasonable expectation of privacy at the time the police searched his girlfriend's apartment." *Id.* Second, the Court rejected defendant's argument that the food stamps he was accused of stealing were not properly admitted into evidence because a clear chain of custody had not been established. *Id.* The Court found that the identity of the evidence was adequately established and that the stamps could not have been subject to material alterations which would not have been readily identifiable. *Id.* (citations omitted). Moreover, the officer who initially recovered the food stamps identified them at trial by their serial numbers. *Id.* Finally, the Court disagreed with defendant's contention that he was denied a fair trial by the court's *Sandoval* ruling. *Id.* at 704, 582 N.Y.S.2d 470. The court found that the trial court "providently exercised discretion to minimize the prejudicial effect of the ruling." *Id.* Finally, the court stated that it had considered the defendant's remaining contentions, including those advanced in his supplemental *pro se* brief, and found them to be without merit. *Id.*

Petitioner sought leave to appeal to the Court of Appeals on the following issues: (1) the trial court's failure to employ a *Sandoval* compromise violated his due process rights; (2) the trial court improperly curtailed the scope of defense counsel's summation; (3) the trial court improperly ruled that he lacked standing to challenge a search of his girlfriend's apartment; and (4) the prosecution failed to establish a clear chain of custody. The Court of Appeals denied leave to appeal on September 12, 1992.

On or about January 23, 1996, petitioner filed a motion for a writ of error coram nobis with the Appellate Division, Second Department. The sole claim raised in petitioner's motion was ineffective assistance of appellate counsel. The motion was denied on April 8, 1996. *People v. Gamble*, 226 A.D.2d 476, 640 N.Y.S.2d 798 (2nd Dept.1996).

Petitioner filed the instant petition on April 15, 1997, and raises the identical claim of ineffective assistance of appellate counsel that he raised in his petition for a writ of error coram nobis, namely, that appellate counsel failed to challenge the denial of the motion to suppress the food stamps which petitioner was alleged to have stolen.

## DISCUSSION

To establish ineffective assistance of counsel, petitioner must satisfy the two-pronged test articulated by *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a showing that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms and that, but for counsel's deficient performance, the outcome of the proceeding would have been different. The *Strickland* test applies to ineffective assistance of appellate counsel claims. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994). There is a strong presumption of reasonable performance by counsel, *see Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, and this presumption will not be overcome through a mere showing that counsel failed to "advance

every nonfrivolous argument," *Mayo*, 13 F.3d at 533. Appellate counsel may focus on key issues and "winnow[ ] out weaker arguments," *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), so long as counsel is careful not to overlook "significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo*, 13 F.3d at 533. A defendant has no constitutional right to compel appellate counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points. *Jones*, 463 U.S. at 745, 751, 103 S.Ct. 3308.

Petitioner argues that his appellate counsel was constitutionally inadequate because he failed to raise three critical issues on his direct appeal that had merit and would have affected the outcome of the appeal: (1) that the suppression court's finding that petitioner did not reside at 2292 West 8th Street was clearly erroneous and therefore its conclusion that petitioner had no standing to challenge the search and seizure was wrong; (2) that the suppression court erred in determining that the search and seizure of the food stamps was constitutionally valid even though the seizure took place without probable cause or a warrant outside the "grab" area of petitioner; and (3) that trial counsel was ineffective for his failure to object to the introduction of the food stamps at trial on the ground that the stamps were the fruit of an unlawful search.

Although Neal Booker's testimony made out the elements of the crime, there is no question that the evidence of the food stamps was significant corroborating evidence which made the evidence of petitioner's guilt overwhelming. Nonetheless, petitioner has not satisfied either prong of the *Strickland* test.

First, petitioner has failed to demonstrate that his appellate counsel's performance was constitutionally deficient. In his twenty-five page brief to the Appellate Division, petitioner's counsel focused on what he asserted as the trial court's error in not employing a *Sandoval* compromise and the trial court's error in curtailing defense counsel's summation. Appellate counsel argued that the trial court's failure to employ a *Sandoval* compromise effectively precluded the petitioner from testifying and that the trial court's curtailment and interruption of defense counsel's summation precluded petitioner from presenting his sole intended defense, namely, that Booker and petitioner had colluded together to steal the money and food stamps from the Money Center.

■ Here, as in *Jones*, 463 U.S. at 745, 748, 103 S.Ct. 3308, petitioner's appellate counsel chose not to present those points presented in petitioner's *pro se* brief, which was submitted and considered on direct appeal. This does not amount to constitutionally deficient performance. It is not required under *Strickland* that an attorney argue every nonfrivolous claim requested by a defendant. It is counsel's duty to choose among potential issues according to his or her professional judgment as to their merit and his or her tactical approach, *Jones*, 463 U.S. at 751–54, 103 S.Ct. 3308; the arguments that appellate counsel did raise on direct appeal were not "clearly and significantly weaker" than the search and seizure arguments that petitioner raises in his current habeas petition. *See Mayo*, 13 F.3d at 533. Thus, counsel's performance did not fall below an objective standard of reasonableness.

■ Petitioner has also failed to satisfy the second prong of *Strickland*, namely, to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. After petitioner's appellate counsel filed his brief, petitioner filed, with the permission of the court, a supplemental *pro se* brief containing the standing argument that petitioner raises in his current habeas corpus petition. Thus, petitioner's *pro se* brief alerted the Appel-

late Division to his standing argument; indeed, the Appellate Division addressed this argument and explicitly rejected it:

> The defendant did not sustain his burden of showing that he had a reasonable expectation of privacy in the apartment where food stamps were seized so as to be entitled to claim protection under the exclusionary rule (*see, People v. Rodriguez,* 69 N.Y.2d 159, 513 N.Y.S.2d 75, 505 N.E.2d 586; *People v. Garrett,* 177 A.D.2d 705, 576 N.Y.S.2d 604). Although the defendant vaguely asserted that he 'used to stay' with his girlfriend and at his mother's apartment, located at different addresses, he did not know in which apartment his girlfriend lived. Moreover, the record is devoid of any evidence establishing the nature or length of the defendant's occupancy of the premises, or any indicia of a legitimate or reasonable expectation of privacy at the time the police searched his girlfriend's apartment. In view of these circumstances, the defendant lacks standing to challenge the search of the apartment and seizure of the food stamps (*see, People v. Rodriguez, supra; People v. Garrett, supra; cf., Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85).

*People v. Gamble,* 182 A.D.2d 703, 582 N.Y.S.2d 470 (2d Dept.1992). *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), to which the Appellate Division referred, was decided after the trial court's denial of petitioner's suppression motion. In that case, the United States Supreme Court ruled that overnight guests have an expectation of privacy in the home of their hosts. The Appellate Division concluded that there was no evidence in this case that defendant had spent or intended to spend the night in his girlfriend's apartment. Thus, the petitioner was not prejudiced by the failure of counsel to address the standing issue raised in the *pro se* brief, for the Appellate Division itself reviewed the issue and applied then current law to its resolution.

Moreover, appellate counsel did raise the standing issue in his letter to the Court of Appeals asking for leave to appeal, and the Court of Appeals denied petitioner's request for leave to appeal. Petitioner has not demonstrated that, had petitioner's appellate counsel raised a standing argument in the Appellate Division, the result of his appeal would have been different, and he therefore cannot succeed on an ineffective assistance of counsel claim. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052.

Given the failure to establish that the standing issue had a reasonable probability of success if raised by counsel, there is no need to address the two arguments as to the validity of the search which petitioner argues counsel should have raised.

## CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is denied in its entirety. In addition, I decline to issue a certificate of appealability since petitioner has not presented a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253.