[991 NYS2d 743]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v DELANE WELLS, Defendant.

Supreme Court, Queens County, July 28, 2014

### APPEARANCES OF COUNSEL

*Richard Carey Spivack*, Kew Gardens, for defendant.

*Richard A. Brown, District Attorney* (*Keshia Espinal* of counsel), for plaintiff.

### OPINION OF THE COURT

DEBORAH STEVENS MODICA, J.

The defendant has submitted a supplemental motion, dated May 27, 2014, seeking suppression of physical evidence. The People oppose the relief sought. A previous motion to suppress physical evidence was denied by this court on August 12, 2013, on the basis that the defendant had failed to demonstrate that he had standing to contest the search of the residence in question.

The court decides the instant motion as follows:

### Findings of Fact

A handgun was recovered from the basement of 126-09 172 Street in Queens, Ms. Junette Shepard's residence, on May 8, 2013. Ms. Shepard provided sworn testimony to the grand jury that the defendant, Delane Wells, did not live at her home although he had been there, and that she had consented to a search of her home by detectives from the New York City Police Department who were seeking the defendant in connection with a shooting at the complainant's home the day before.

The police had recovered a deformed bullet from the complainant's bed and had observed a bullet hole in the complainant's

window sill. Armed with that information, and having interviewed the complainant, who referred Detective Whalley to the defendant's father's home and Ms. Shepard's residence as places where the defendant would sometimes stay, the detective went to both locations. The detective also made application in writing to the defendant's cell phone carrier, requesting the "pinging" of his cell phone, citing the exigent circumstances of the defendant having "threatened the victim with a firearm in the past and today fired a shot at the victims [sic] head missing victim by an inch. Perpetrator has told victim he is going to kill her . . . Perpetrator needs to be located to prevent serious injury or death to victim." Pursuant to the exigent circumstances declaration, the cell phone carrier provided the police with coordinates of an area within which the defendant's cell phone was located. Within that area was 126-09 172 Street, where defendant's cousin, Ms. Junette Shepard, lived.

When Detective Whalley arrived, he saw a person at the door who retreated back into the house. Hearing a noise in the backyard, Detective Whalley went to the back of the house and saw a rear window of the residence open, with the venetian blinds pushed outside, as well as a curtain rod and the window frame. The police were permitted entry by Ms. Shepard and were directed to the basement by her, who said the defendant had been there. A gun and the defendant's cell phone were recovered in the basement. The defendant himself was arrested shortly after, a few blocks away.

## Conclusions of Law

Preliminarily, the court continues to hold that the defendant does not have standing to contest the search of his cousin's residence. Both he and his cousin testified under oath before the grand jury that he did not live there; the defendant also testified he did not store personal belongings there either. He was also not present at the time of the search. The defendant has failed to establish standing to contest the search of Ms. Shepard's residence and on that basis his motion to suppress is denied. (*See People v Ponder*, 54 NY2d 160 [1981]; *People v Burton*, 6 NY3d 584 [2006].)

Nor is this finding changed by defendant's new allegations concerning the "pinging" of his cell phone to recover location information. Because of the developing nature of the law with regard to the retrieval of cell site location information, as well as related areas such as GPS tracking, the court will address the issue in this case.

In addition to ordinary police investigative techniques, such as interviewing the complainant, the defendant's father and cousin, as well as canvassing the neighborhood for both the defendant and other potential witnesses, the police in this case also requested cell site location information to try to locate the defendant's cell phone, commonly referred to as "pinging." A cell phone carrier provides service to its customers by the use of GPS or Global Positioning System satellite radio navigation, which is a utility owned by the United States, and which provides highly accurate positioning, navigation and timing services worldwide to any device equipped with a GPS satellite receiver. (*See People v Moorer*, 39 Misc 3d 603 [Monroe County Ct 2013].) Cell phones, of course, are equipped with GPS receivers. A provider has a network of base stations, or cell towers, which receive signals from cell phones in its area. When cell phones are powered on, they identify themselves to the nearest cell tower with the strongest signal. If a subscriber moves closer to a different cell tower, and is making a call, the call is "handed off" to the closer cell tower. (*See In re Application of United States for an Order Authorizing Release of Historical Cell-Site Info.*, 736 F Supp 2d 578 [ED NY 2010]; *Commonwealth v Augustine*, 467 Mass 230, 4 NE3d 846 [2014].) A cell phone carrier is able to generate location information based on the receipt of these signals. A user can deactivate this feature on his or her phone by turning it off. (*See People v Moorer.*) This same system is used by cars equipped with GPS and is used to get driving directions from one location to another, to locate the car if stolen, as well as to find lost cell phones.

The question before the court is whether the "pinging" of defendant's cell phone by his cell phone carrier at the request of the police was, in the first instance, a search, and then secondly whether the defendant had a legitimate expectation of privacy in GPS information generated by the cell phone carrier. It is the court's view that such "pinging" is not a search; nor does the defendant have a legitimate expectation of privacy in data generated by third parties such as the GPS utility and the phone carrier.

Unlike the facts in *United States v Jones* (565 US —, 132 S Ct 945 [2012]) and *People v Weaver* (12 NY3d 433 [2009]), which both involved the surreptitious physical installation of a tracking device on each defendant's car, intruding on a constitutionally protected area, the facts in this case present no such intrusion into the defendant's "person[ ], house[ ], papers, and

effects." (US Const Fourth Amend.) As noted, the defendant did not have an expectation of privacy in his cousin's residence. Even if he had, the pinging of the phone did not intrude into the inside of the home; rather it provided the general area near cell phone towers, based on a calculation of latitude and longitude, within which the cell phone could be found. The defendant's cousin's home, which the police had already focused on, fell within that area. Defendant has no legitimate expectation of privacy in such a public area. (*See Katz v United States*, 389 US 347 [1967]; *United States v Skinner*, 690 F3d 772 [6th Cir 2012]; *United States v Forest*, 355 F3d 942 [6th Cir 2004]; *In re Application of United States for an Order for Disclosure of Telecom. Records & Authorizing the Use of a Pen Register & Trap & Trace*, 405 F Supp 2d 435 [SD NY 2005]; *People v Hall*, 14 Misc 3d 245 [Sup Ct, NY County 2006].)

In addition, neither the content of his phone calls nor his text messages were seized, which would have implicated his Fourth Amendment rights. (*See Riley v California*, — US —, 134 S Ct 2473, 189 L Ed 2d 430 [2014].) Not even the numbers the defendant may have called were identified, although that has been held to be acceptable (*see Smith v Maryland*, 442 US 735, 743-744 [1979]; *United States v New York Telephone Co.*, 434 US 159 [1977]; *People v Di Raffaele*, 55 NY2d 234 [1982]). And, of great concern to the courts presently, there was no "tracking" of the defendant's calls or his location over an extensive period of time without a warrant. (*See United States v Jones*; *United States v Karo*, 468 US 705 [1984]; *In re Application of United States for an Order Authorizing the Release of Historical Cell-Site Info.*) The mere "pinging" of his cell phone to obtain one-time location information is not a search (*see United States v Knotts*, 460 US 276 [1983]), and given the demonstration of exigency, there is no basis upon which to suppress such information as unlawfully gathered (*cf. People v Weaver*). In fact, the detective's statement of exigency to the carrier demonstrated probable cause that the defendant committed a crime against the complainant and was at large with a gun, having threatened to kill her and having already fired a shot at her. Moreover, the defendant has no standing to challenge information in the possession of a third party, in this case, the cell phone carrier. It has long been settled that a person has no expectation of privacy in bank records or telephone records (*United States v White*, 401 US 745 [1971]; *Smith v Maryland*; *People v Di Raffaele*; *People v Adeniran*, 116 AD3d 706 [2d Dept 2014]). A defendant

has no legitimate expectation of privacy in the records maintained by the telephone company. (*People v Guerra*, 65 NY2d 60 [1985].) The GPS signal data of a cell phone carrier is analogous to bank records and telephone records held by third parties; thus, the defendant has no expectation of privacy and no standing to challenge the provision of the cell site data by his carrier to the police. (*Fisher v United States*, 425 US 391 [1976]; *People v Di Raffaele*; *People v Guerra*; *People v Moorer*.)

Finally, in this year, 2014, it can be said that cell phone users (including non-adult users) are aware of both the capacity for their phone to be located by GPS, and their ability to avoid that function by turning off their phone. Based on both the wide use of this technology for car navigation, car location, lost cell phones, and a myriad of other uses, it can no longer be said that one can reasonably expect that a cell phone that is turned on will have its location remain private. This is not a function of surreptitious police investigative intrusions as occurred in *Jones* and *Weaver*, but rather is part of the package for cell phone users. At this stage of GPS technology, there is no reasonable expectation of privacy in the location of a cell phone. (*See People v Moorer* at 618.) In any event, regulation of this technology, should there be any, should be exercised by the legislature and not by the courts. (*See* Orin S. Kerr, *The Fourth Amendment and New Technologies: Constitutional Myths and the Case for Caution*, 102 Mich L Rev 801 [2004].) Given that the defendant has not demonstrated standing to challenge either the acquisition of the GPS information for his cell phone, nor any standing to contest the search of a residence where he had no legitimate expectation of privacy, the defendant's supplemental motion to suppress the physical evidence recovered is denied.